CHARLES E. GOWL ET AL. *v.* ATLANTIC RICHFIELD COMPANY

[No. 676, September Term, 1974.]

*Decided July 3, 1975.*

The cause was argued before THOMPSON and LOWE, JJ., and ROBERT F. SWEENEY, Chief Judge of the District Court of Maryland, specially assigned.

*Richard D. Payne* for appellants.

*Cornelius F. Sybert, Jr.* and *Louis A. Becker*, with whom were *Sybert, Sybert & Nippard* on the brief, for appellee.

SWEENEY, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Howard County (Macgill, J.) reversing the decision of the Board of Appeals for Howard County, and permitting the construction of a facility for the storage of bulk petroleum products. The land in question is a tract of 19.27 acres, zoned M-2 heavy industrial, which fronts on Hanover Road in Howard County, within 500 feet of the Howard County-Anne Arundel County division line.

Under M-2 zoning, bulk storage of gasoline, fuel oil, bottled gas, or liquefied petroleum is permitted as a matter of right, provided that the maximum above ground storage does not exceed 30,000 gallons for each 20,000 sq. ft. of lot area. Bulk storage of petroleum products in excess of those

limitations requires the granting of a special exception by the County Board of Appeals. That Board, before approving such a special exception, must find that the proposed use "would not menace the public health, safety, morals or general welfare of the community." Section 30.01 of the Zoning Code of Howard County.

The Board of Appeals held five public hearings on the petition for the special exception, beginning on January 15, 1973, and concluding on March 20, 1973. On July 9, 1973, the Board issued a Decision and Order denying the petition, and that denial was appealed to the Circuit Court for Howard County. The Appellants in this case were protestants before the Board, who intervened as appellees in the Circuit Court proceeding.

Twenty-three witnesses testified before the Board, seven for Atlantic Richfield and sixteen for the protestants. Additionally, Atlantic Richfield introduced 20 exhibits at the Board of Appeals proceeding and the protestants, in their turn, submitted 15 exhibits.

It is obvious from his Memorandum Opinion and Order that Judge Macgill carefully reviewed the voluminous record made in the Board of Appeals. After his review of the entire record, Judge Macgill concluded therefrom that "the findings of the Board were not supported by substantial probative evidence, [and that] the decision of the Board denying the application must be reversed."

In denying the petition for the special exception, the Board of Appeals made the following findings:

1. That the proposed use would adversely affect the surrounding and vicinal properties by creating undue traffic congestion on a presently inadequate and hazardous road network and would result in a situation which would menace the public safety and jeopardize the lives of people residing, or traveling, in the area and their property.

2. That the proposed area would be within five hundred feet of a residential district which is

prohibited by [Section] 30.01 of the zoning regulations of Howard County.

3. The increased vehicular traffic that would be produced both in volume and type would interfere with the reasonable enjoyment of people in their homes.

4. The support structures for the proposed pipeline from the tanks to the loading area would be within the floodplain and as a result would provide a potential danger to the surrounding properties, as well as menace the general welfare.

5. The water necessary for fire protection and for consumption by the employees is not presently available.

In his Memorandum Opinion, Judge Macgill carefully considered each of these findings, and examined in detail the testimony allegedly supporting each of the findings. Our review of the record leads us to concur in his view that the record is devoid of facts to support the Board's decision to deny the application for a special exception.

Three of the five findings of the Board may be dealt with summarily. First is the Board's finding that the application should be denied because the proposed area would be within 500 feet of a residential district, thereby violating the zoning regulations of Howard County. Although it is undisputed from the record that the borders of the property under consideration reach to a point within 500 feet of a residential district, this fact, standing alone, was not sufficient to authorize the denial of the application. Judge Macgill sets out the view, which we share, that the proper test to be applied is whether the portion of the property to be used for the proposed purpose is within 500 feet of a residential area. According to the voluminous plats and other exhibits submitted to the Board, and according to the testimony of Dr. Dorothy A. Munsey, an expert witness for the Appellee, the facilities to be actually utilized on the premises are a minimum of 550 feet from any residential district. Section 30.01 of the zoning regulations of Howard County provides

that "no land or building shall be *used* for any of the following uses within 500 feet of any Residential District." (Emphasis supplied). Since virtually all of the evidence before the Board was to the effect that none of the land within 500 feet of the nearest residential district would be used for the bulk storage of oil and petroleum products, we believe it immaterial that the perimeter of the property encroaches on the 500 foot line of demarcation. As all structures and tanks constructed on this property will be well buffered from the surrounding property by open unused land, we find no violation of the only obvious intent and purpose of the zoning regulation.

Similarly devoid of a substantial factual basis was the Board's finding that "[t]he water necessary for fire protection and for consumption by the employees is not presently available." The record before the Board clearly showed that all necessary water is available within 400 feet of the property, that an extension of the water main to the subject property could be arranged, and that the Appellee has plans to enter into a developer's agreement to extend that water line. Testimony before the Board indicates that only 19 persons would be employed on these premises, including supervisory personnel. Water sufficient for the needs of such a limited number of persons could probably be provided from private contractors. Whether that is feasible or not, however, we agree with Judge Macgill that it was unreasonable for the Board to ignore the testimony that an eight inch city water main now reaches within 400 feet of the premises. The Appellee, before commencing the use of these premises for its intended purpose, must comply with all State and local building codes and safety standards and we are entitled to assume that the necessary permits will not be granted until the water connection is made and adequate fire protection provided.

In considering the Board's finding that "[t]he support structures for the proposed pipeline from the tanks to the loading area would be within the floodplain and as a result would provide a potential danger to the surrounding properties, as well as menace the general welfare", Judge Macgill said:

"The Board's finding . . . cannot be faulted as an abstract proposition. There was, however, testimony that the likelihood of such a danger was minimal. It should be borne in mind that all uses of this nature present a 'potential' danger but if the possibilities rather than the probabilities of danger are good grounds for denying permits for such uses, it is difficult to see how these uses could be permitted anywhere, regardless of what steps might be taken to minimize the potential dangers accompanying them.

"In this connection the following quotation from *Deen v. Baltimore Gas and Electric Company*, 240 Md. 317, at 330, appears pertinent: 'Appellants assert that it was error for the Board to fail to consider the future effects which the high tension wires would have on the health, safety and general welfare of the locality "which could be reasonably anticipated in a normal course of its development". This factor was without relevance in this case, because there was no evidence produced at the hearing which would show that the effect of high tension wires on the future health, safety and welfare of this area would be in any respect different than its effect on any other rural area. Section 502.1 implies that the effect on health, safety or general welfare must be in some sense unique or else a special exception could never be granted in such an area for the above ground location of high tension wires. The only evidence as to future conditions was testimony revealing the possibility of future development of this land. Such a possibility alone does not come close to showing any future deleterious effect upon the public health, safety or general welfare.' "

In support of Judge Macgill's position, we find in the record the testimony of Walter H. Geibel, another expert for Appellee, that the pipelines in question would more than likely be four or five feet above the highest known liquid

level in the 100 year floodplain, and that the support of the facility would probably be twice as strong as the waters of any imaginable flood. Appellee, in its brief, points out that bridge abutments are built on floodplains as a matter of course, and we agree with Appellee that it is "beyond reason" to suppose that adequate engineering does not exist to provide for the safe construction of the pipeline across the floodplain area.

More troublesome to Judge Macgill and to us are the findings of the Board concerning the increased vehicular traffic which would occur if the application for a special exception were to be granted. The Board, in its findings one and three, held:

> 1. That the proposed use would adversely affect the surrounding and vicinal properties by creating undue traffic congestion on a presently inadequate and hazardous road network and would result in a situation which would menace the public safety and jeopardize the lives of people residing, or traveling, in the area of their property.
>
> 3. The increased vehicular traffic that would be produced both in volume and type would interfere with the reasonable enjoyment of people in their homes.

Judge Macgill found that the evidence before the Board was "certainly substantial, and more than substantial, that the access roads to the property, in their present state, were inadequate to service the proposed use or, presumably, any substantial industrial use, and that the presence of any number of trailer-trucks on these roads would create a hazard." Judge Macgill also noted, however, that there was evidence before the Board that the widening and upgrading of the South Hanover Road was reasonably possible of fruition in the foreseeable future, but he "does not suggest that the action of the Board in this case should be reversed simply because the Board could have found that an adequate access road was reasonably probable of fruition in the foreseeable future, or because the Board could have, as a

condition precedent to construction, required that South Hanover Road be upgraded to serve the industrial area through which it runs."

Judge Macgill went on to point out that in rejecting this application because of possible increase in vehicular traffic, the Board was making a comparison between existing traffic patterns around the presently undeveloped property and traffic patterns that could arise if the proposed use were to be permitted, without considering at all that an even greater volume of traffic than that anticipated for the storage facility could arise from any of several uses for which the property is now zoned and for which no special exception would be required. He noted that under the present M-2 zoning, the subject premises could be used for aircraft manufacture or assembly; automobile or truck assembly plants; food manufacturing, packing or processing plants and bituminous road material mixing plants.

We believe it obvious that any one of these permissible uses of these premises could result in increased vehicular traffic of greater volume and density than that which is considered probable for the bulk storage facility, and we do not believe it arguable that it is any more desirable to have a concrete or bituminous mixing vehicle drive past one's home than a gasoline or fuel oil tank truck.

We think it fully appropriate that Judge Macgill found the proper test to be a comparison between the traffic problems that might arise under the proposed use and traffic problems that could arise from the usage of the premises now permitted by law. We recognize that traffic impact is a sufficient basis to deny a zoning application, including an application for a special exception. *Templeton v. County Council,* 21 Md. App. 636, 321 A. 2d 778 (1974); *Temmink v. Board of Zoning Appeals,* 212 Md. 6, 128 A. 2d 256 (1956); *Hardesty v. Zoning Board,* 211 Md. 172, 126 A. 2d 621 (1956). But traffic impact on an application for a special exception ought to be measured against that which could arise under permissible use, and not merely on existing traffic loads around the undeveloped premises. Where, as here, the potential volume of traffic under the requested use would

appear to be no greater than that which would arise from permitted uses, we believe it arbitrary, capricious and illegal to deny the application for special exception on vehicular traffic grounds.

The duty of the trial court and the duty of this Court in reviewing a decision of a board of appeals in a zoning case is the same. The courts are not permitted to substitute their judgment as to the wisdom or soundness of the action taken by the administrative body, but must confine themselves to a consideration as to whether the action was illegal, arbitrary or discriminatory. If the decision of the Board was based on fairly debatable evidence, that decision must be upheld, and only where there is no room for reasonable debate or where the record is devoid of supporting facts are the courts authorized to declare an administrative act invalid.

In *Turner v. Hammond*, 270 Md. 41, 310 A. 2d 543 (1973), the Court said, at 54:

> "Occasionally the bar and less often the bench lose sight of the concept that the conditional use or special exception, as it is generally called, is a part of the comprehensive zoning plan sharing the presumption that as such it is in the interest of the general welfare and, therefore, valid.
>
> "While the applicant has the burden of adducing testimony which will show that his use meets the prescribed standards and requirements he does not have the burden of showing affirmatively that his proposed use accords with the general welfare. If he shows to the satisfaction of the Board that the proposed use would be conducted without real detriment to the neighborhood and would not actually adversely affect the public interest, he has met his burden. The extent of any harm or disturbance to the neighboring area and uses is, of course, material but if there is no *probative* evidence of harm or disturbance in light of the nature of the zone involved or of factors causing

disharmony to the functioning of the compre-
hensive plan, a denial of an application for a spe-
cial exception is arbitrary, capricious and illegal."

*Prince George's Co. v. Meininger,* 264 Md. 148, 285 A. 2d 649
(1972); *Gerachis v. Mont. Co. Board of Appeals,* 261 Md. 153,
274 A. 2d 379 (1971); *Kirkman v. Montgomery Co. Council,*
251 Md. 273, 247 A. 2d 255 (1968).

The Court has also stated that a special exception is a
valid zoning mechanism that delegates to an administrative
board a limited authority to permit enumerated uses which
the legislature has determined can, prima facie, properly be
allowed in a specified use district, absent any fact or
circumstance in a particular case which would change its
presumptive finding; and that the duties given the board are
to judge whether the neighboring properties would be
adversely affected, and whether the use in the particular
case is in harmony with the general purpose and intent of
the zoning plan. *Rockville Fuel v. Board of Appeals,* 257 Md.
183, 262 A. 2d 499 (1970); *Oursler v. Board of Zoning
Appeals,* 204 Md. 397, 104 A. 2d 568 (1954); *Montgomery
County v. Merlands Club,* 202 Md. 279, 96 A. 2d 261 (1953).

We concur in Judge Macgill's view in this case that the
evidence before the Board simply does not support the
conclusions it reached. The findings of the Board regarding
the proximity of the site to a residential district, dangers
arising because a portion of the property is within a
floodplain, and the nonavailability of water necessary for
fire protection or consumption by the employees simply
cannot be supported by the evidence presented to the Board.
Although, as Judge Macgill noted, the Board could correctly
conclude that the requested use would considerably increase
the volume of traffic on the premises over existing traffic
patterns and thereby menace the public safety or interfere
with the reasonable enjoyment of people in their homes, we
also agree with him that this reason would be insufficient to
deny the application because similar or even more
disadvantageous traffic conditions could easily arise if the

420

premises in question were utilized for any of the lawful purposes now permitted under the heavy industrial zoning affecting this property. We believe the Board's refusal, therefore, to permit this special exception was arbitrary, illegal and capricious.

*Judgment affirmed, costs to be paid by appellants.*