# EXXON, INC. *v.* THE CITY OF FREDERICK

[No. 1049, September Term, 1976.]

*Decided July 8, 1977.*

The cause was argued before MENCHINE, LOWE and MELVIN, JJ.

*M. Albert Morningstar,* with whom were *Richard E. Zimmerman* and *David E. Aldridge* and *Zimmerman, Aldridge & Dwyer* on the brief, for appellant.

*W. Milnor Roberts* for appellee.

MELVIN, J., delivered the opinion of the Court.

Under the zoning ordinance of the City of Frederick, in effect at the time of these proceedings, "automobile service stations" are permitted as a "conditional use" in an area zoned B-3 (General Business District) provided approval of the City's zoning board of appeals (Board) is first obtained. The appellant, Exxon, Inc. (Exxon), obtained such approval on May 18, 1976 for property located on the north side of U. S. Route 40 (a state highway) and the west side of the

entrance from U. S. Route 40 to the Frederick County Square Shopping Center. The Board conditioned its approval, however, upon there being an entrance to the station from Route 40 only "at the location proposed by the applicant ... and that *exit from the station be into the western lane of Frederick County Square entrance and also from the northwest corner of the station onto the Frederick County Square parking lot*".[1]

Exxon is not happy with that portion of the condition that prevents an *exit* from its property onto Route 40. After an unsuccessful appeal to the Circuit Court for Frederick County, Exxon presents to us two narrow legal issues:

"1. Can the Board of Zoning Appeals lawfully restrict access to U.S. Route 40?

2. Was the action of the Board of Zoning in granting the conditional use for a service station with the condition that egress to U.S. Route 40 be denied lawful?"

We answer both questions in the affirmative and therefore affirm the judgment below.

I

Citing section 44 of Article 89B of the Maryland Code (1969 repl. vol.),[2] Exxon contends that the State of Maryland has the exclusive authority to control access to state highways and therefore the City of Frederick zoning board of appeals does not have "the power to take away that which it does not have the power to grant". That section provides:

"In order to promote and further highway safety, the State Roads Commission is hereby authorized to limit the width of points of existing ingress and egress and determine the location of same that any commercial or industrial property owner or user may use into any existing state highway or section of state highway that carries an average traffic

---

1. Other conditions were imposed, but are not involved in this appeal.
2. Now Transportation Article, § 8-625 (Code 1977).

volume of more than 2,000 vehicles per day, such traffic volume to have been determined over a period of one year by procedures heretofore used by the state roads commission to establish densities of traffic. The Commission, if determined expedient for traffic safety, may so limit such width and location by any method it deems desirable, provided, however, that nothing herein contained shall be construed to give the Commission the authority to deny any abutting property owner all access along any state highway except along freeways as defined in Section 214 of this Article."

Section 45 of Article 89B [3] provides for a permit to be issued by the State Roads Commission for access to a state highway.

By its terms neither section gives the State Roads Commission exclusive jurisdiction to control access onto a state highway from abutting commercial or industrial properties. We do not think that the fact that the Commission may "limit the width of points of existing ingress and egress and determine the location of same" in any way impinges upon the authority of municipalities in the proper exercise of their zoning powers, delegated to them by the General Assembly, to deny such access. It may be true that a municipality may not permit access onto a state highway at a location where the State has denied one. It does not follow, however, that because the State has granted such access the municipality, in furtherance of its zoning powers, may not, in a proper case, deny it as a valid condition to the granting of a special exception or conditional use.

## II

The evidence before the Board was uncontradicted that some uses permitted in a B-3 zone (that are not subject to the "conditional use" requirements of the zoning ordinance), such as restaurants and fast-food establishments, would

3. *Ibid.*

create as much or more of a traffic impact if they were located on the Exxon property as would an automobile service station. Exxon argues that because those permitted uses can not be denied an exit onto U. S. Route 40, it is not "lawful" to impose such a condition upon the "conditional use" of the property as an automobile service station. It asserts that "[n]o condition can be placed on the subject's situs that cannot be placed on a permitted use under the B-3 classification". As authority for this novel proposition, Exxon cites *Miller v. Kiwanis Club of Loch Raven*, 29 Md. App. 285, 347 A. 2d 572 (1976) and *Gowl v. Atlantic Richfield Company*, 27 Md. App. 410, 341 A. 2d 832 (1974).

In both *Miller* and *Gowl*, the local zoning authority had *denied* an application for a special exception, in part because of the traffic impact the requested use would have upon the largely underdeveloped surrounding neighborhoods. We expressed disapproval of the denial in each case. In *Gowl*, which we relied upon in *Miller*, we said, at 417-418:

> "... We recognize that traffic impact is a sufficient basis to deny a zoning application, including an application for a special exception. *Templeton v. County Council*, 21 Md. App. 636, 321 A. 2d 778 (1974). *Temmink v. Board of Zoning Appeals*, 212 Md. 6, 128 A. 2d 256 (1956); *Hardesty v. Zoning Board*, 211 Md. 172, 126 A. 2d 621 (1956). But traffic impact on an application for a special exception ought to be measured against that which could arise under permissible use, and not merely on existing traffic loads around the underdeveloped premises. Where, as here, the potential volume of traffic under the requested use would appear to be no greater than that which would arise from permitted uses, we believe it arbitrary, capricious and illegal to deny the application for special exception on vehicular traffic grounds".

In *Miller*, we held it legally arbitrary and capricious to completely *deny* a special exception on the ground that the requested use would increase vehicular traffic generally and

there were permitted uses in the zoning district that would have the same effect. We did not say that the local zoning authority could not impose reasonable conditions, when authorized by a zoning ordinance, upon the *granting* of a special exception or conditional use — even though such conditions may not be authorized by the ordinance upon permitted uses in the same district.

In the present case, Exxon concedes that the Board is authorized "to prescribe appropriate conditions and safeguards" in granting the "conditional use". Section 21.342 of the City of Frederick zoning ordinance provides:

"In connection with the authorization of any conditional use or exception, the board may require the installation, operation, and maintenance in or in connection with the proposed use, of such devices and methods of operation as may, in its opinion, be *reasonably required to prevent or reduce hazardous or congested traffic conditions*, odor, dust, smoke, gas, noise, or similar nuisances, and it may impose such other conditions and requirements as may be necessary in its opinion to protect adjacent properties and neighborhoods and prevent conditions which may become obnoxious or offensive." (Emphasis added.)

There was ample evidence before the Board to support a finding that the challenged condition imposed in this case was "reasonably required to prevent or reduce hazardous or congested traffic conditions" at the site of the proposed service station. In the circumstances, the fact that (arguably at least) the same condition could not be imposed upon a permitted use in the same zoning district in no way affects its validity in this case.

*Judgment affirmed.*
*Costs to be paid by appellant.*