BROWNING-FERRIS, INCORPORATED *v.* ANNE
ARUNDEL COUNTY, MARYLAND

[No. 151, September Term, 1980.]

*Decided December 15, 1981.*

The cause was argued before Smith, Digges, Eldridge, Cole, Davidson and Rodowsky, JJ.

*Thomas M. Downs,* with whom were *Blumenthal, May, Downs & Merrill, P.A.* on the brief, for appellant/ cross-appellee.

*Thomas G. Redman, Assistant County Solicitor,* for appellee/cross-appellant.

Eldridge, J., delivered the opinion of the Court.

Seeking to control the transportation and depositing of various hazardous and toxic wastes, and radioactive materials within its borders, Anne Arundel County enacted two ordinances in 1979, Bill Nos. 158-79 and 159-79, codified as Anne Arundel County Code § 11-401 and § 11-408 (g), (h) and (i). This case concerns the validity of several sections of the two ordinances.

The disputed provisions of the ordinances can be summarized as follows. Section 11-408 (g) (1) (ii) absolutely prohibits the disposal in and transportation through Anne

Arundel County of various hazardous wastes [1] not originating in that county. Section 11-408 (g) (1) mandates that all who would transport hazardous wastes through the county must have a license. The same section also requires a license to dispose of hazardous wastes in Anne Arundel County. In order to obtain either a transportation or a disposal license, a manifest must be submitted to the county detailing the quantity and type of waste involved. Section 11-408 (g) (1) (i) provides that a cargo manifest also accompany in transit each shipment of hazardous wastes, and that the manifest be retained at the disposal site. Section 11-408 (i) specifies a $1,000 annual fee for the license to transport hazardous waste through Anne Arundel County, required by § 11-408 (g) (1). The licensing section also provides that each transporting vehicle of a licensee must be annually registered for a $50 fee (but the section states that the $1,000 license fee "shall include the first registered vehicle,") and be "regularly inspected."

Finally, § 11-408 (g) (1) (iii) prohibits absolutely the disposal of radioactive materials in the county. And § 11-408 (h) requires that a person obtain a "Certificate of Emergency Transport" in order to transport various radioactive materials through the county. Such a certificate is made available for $50 plus any additional amount necessary to cover the cost of inspection, supervision and escort services which are "prescribed by approving agencies." The time and route to be travelled are to be specified by the County Health Officer and the Chief of Police. Section 11-408 (i) sanctions no more than four "emergency transports" per year without obtaining a hazardous waste transportation license for $1,000.

---

1. We shall use the term "hazardous wastes" as a shorthand for the substances defined as hazardous, toxic and special waste at § 11-401 (2) of the ordinance including:

"[a]ny hazardous solid or liquid waste such as highly flammable or caustic materials, explosives, pathological waste, sewage sludge or effluent, poisons; infectious waste from doctors' offices such as syringes, patients' specimens, discarded dressings, etc. and radioactive materials. This also includes the designated hazardous substances as defined in COMAR 08.05.05.04 and 08.05.05.18."

Browning-Ferris, Inc. is the owner and operator of a landfill located on Solley Road in Anne Arundel County, which is licensed by the State of Maryland to receive hazardous, but not radioactive, wastes. Browning-Ferris is also a hauler of hazardous (but non-radioactive) waste materials within Anne Arundel County. The county notified the corporation that compliance with the new regulations was expected, and, as a result of that notification, Browning-Ferris filed a petition in the Circuit Court for Anne Arundel County challenging the ordinances on various grounds and seeking declaratory and injunctive relief.

The circuit court (Wolff, J.) declared that § 11-408 (g) (1) (ii) of the Anne Arundel County ordinance, prohibiting transportation through the county and disposal in the county of hazardous wastes originating outside of the county, violated the Commerce Clause of the United States Constitution, Art. 1, § 8, cl. 3. The court went on to declare that all other provisions of the ordinances relating to hazardous waste and radioactive materials transportation, in §§ 11-408 (g) (1), 11-408 (h) and 11-408 (i), were void on the ground of federal preemption. On the other hand, the court upheld those portions of the ordinances in § 11-408 (g) (1) regulating the disposal of hazardous wastes and prohibiting the disposal of radioactive materials in the county. Finally, the court permanently enjoined the county from implementing or enforcing § 11-408 (g) (1) (including its subsections) as it pertained to transportation of hazardous wastes and radioactive materials, and §§ 11-408 (h) and 11-408 (i) in their entireties.

The county appealed, attacking the injunction and the declaratory judgment to the extent they struck down parts of the ordinances. Browning-Ferris appealed from the injunction and declaratory judgment insofar as they upheld the portions of the ordinances regulating hazardous waste disposal and prohibiting radioactive materials disposal in the county. This Court, on its own motion, granted a writ of certiorari before oral argument in the Court of Special Appeals.

## I.

Section 11-408 (g) (1) (ii) of the Anne Arundel County Code prohibits absolutely the transportation through and disposal in Anne Arundel County of hazardous wastes from any areas other than Anne Arundel County.[2] In this respect, the ordinance is very similar to a New Jersey law, prohibiting importation of wastes into that state, which was struck down by the United States Supreme Court in *Philadelphia v. New Jersey,* 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). The New Jersey Supreme Court, at 68 N.J. 451, 348 A.2d 505, had upheld the act as advancing vital health and environmental objectives, while posing little burden upon interstate commerce. *Philadelphia v. New Jersey, supra,* 437 U.S. at 620. The Supreme Court disagreed, however, holding that the act "[o]n its face ... imposes on out-of-state commercial interests the full burden of conserving the State's remaining landfill space. . . . [T]he State has overtly moved to slow or freeze the flow of commerce for protectionist reasons." *Id.* at 628. The Court stated that the New Jersey act represented an "attempt by one State to isolate itself from a problem common to many by erecting a barrier against the movement of interstate trade." *Ibid.*

Although recognizing that New Jersey might well have had valid health and environmental or financial reasons for enacting the law in question, the United States Supreme Court held that it was impermissible in any case to accomplish these legitimate ends "by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently." *Id.* at 626-627.[3]

---

**2.** Section 11-408 (g) (1) (ii) reads:

"(ii) Hazardous, toxic and special waste from areas other than Anne Arundel County shall not be accepted at the sanitary or other landfills in Anne Arundel County. Such waste may not be transported on the roads of Anne Arundel County, or in the coastal zones as defined in the Coastal Zone Commission of Anne Arundel County Report, unless expressly permitted by this subtitle."

**3.** The Court held that wastes are, for commerce clause purposes, articles of commerce, and that laws affecting wastes in interstate commerce are

It is obvious that § 11-408 (g) (1) (ii) of the Anne Arundel
County Code does exactly what is forbidden by *Philadelphia
v. New Jersey*.[4] The ordinance, while permitting transporta-
tion and disposal of hazardous waste under certain condi-
tions if the waste originates within the county, nonetheless
closes down the county's borders to all of those who would
either transport or dispose of wastes originating from
outside the county. Thus the ordinance overtly discriminates
against articles in interstate commerce. Since no reason has
been advanced for treating out-of-county wastes differently
from in-county wastes, apart from their origin, we hold that
§ 11-408 (g) (1) (ii) is void under *Philadelphia v. New Jersey,
supra,* as impermissibly discriminating against articles in
interstate commerce.[5] The county may not attempt to avoid

---

subject to constitutional scrutiny. Philadelphia v. New Jersey, 437 U.S. 617,
622, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978).

**4.** For commerce clause purposes, local ordinances have been required to
withstand at least the same degree of constitutional scrutiny as state laws.
*See, e.g.,* Huron Portland Cement Co. v. City of Detroit, Michigan, 362 U.S.
440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960); City of Chicago v. Atchinson, T. & S.
F. Ry., 357 U.S.77, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958); City of Chicago v.
Willet Co., 344 U.S. 574, 73 S.Ct. 460, 97 L.Ed. 559 (1953).

**5.** During oral argument, counsel for the county suggested that, if we find
§ 11-408 (g) (1) (ii) violative of the Commerce Clause, we should
nonetheless hold the provision valid as applied to hazardous waste moving
in *intrastate* commerce. The effect of counsel's suggestion would be to
permit disposal in and transportation through Anne Arundel County of
hazardous wastes from the county itself, and from everywhere else in the
entire world, except wastes originating from the other counties and cities
in Maryland. In effect, counsel is requesting that we sever this section of the
ordinance, holding it invalid as it applies to interstate waste, but valid for
intrastate waste.

Although there is a presumption that a legislative body intends its
enactments to be severable, nevertheless that presumption is not conclu-
sive, even if the enactment contains a severability clause. In such cases, we
have held that the issue is "what *would have been the intent* of the legisla-
tive body, if it had known that the statute could be only partially effective."
O. C. Taxpayers v. Ocean City, 280 Md. 585, 600, 375 A.2d 541 (1977). *See
also,* Shell Oil Co. v. Supervisor, 276 Md. 36, 48, 343 A.2d 521 (1975); Anne
Arundel County v. Moushabek, 269 Md. 419, 428, 306 A.2d 517 (1973);
Sanza v. Md. Board of Censors, 245 Md. 319, 338, 226 A.2d 317 (1966). This
Court has indicated that "[w]hen the dominant purpose of an enactment
may largely be carried out notwithstanding the statute's partial invalidity,
courts will generally hold the valid portions severable and enforce them."
O. C. Taxpayers v. Ocean City, *supra,* 280 Md. at 601. *See also* Shell Oil Co.
v. Supervisor, *supra,* 276 Md. at 49; Anne Arundel County v. Moushabek,
*supra,* 269 Md. at 430. The converse of this proposition is also true; if the
dominant purpose of the enactment cannot be carried out in light of the
invalid portions, that would weigh against severability.

what amounts to a problem of state and national scope by cutting itself off from the rest of the country. That is clearly prohibited by the Commerce Clause.

## II.

Section 11-408 (g) (1) requires that all who would transport hazardous wastes through Anne Arundel County have on file with the county an application and a license issued by the county. The same section requires that a manifest detailing the nature and quantity of each shipment also be on file with the county.[6] Section 11-408 (g) (1) (i) requires that the manifest accompany all shipments of hazardous wastes through the county.[7] Section 11-408 (i) imposes a $1,000 annual fee for obtaining the license required by

---

In the present case, there is no indication that the county would ever have enacted a measure enabling the county and the entire world to transport through and to dispose of hazardous wastes in the county, while at the same time exluding waste originating from other regions of Maryland. Moreover, on its face, the dominant purpose of § 11-408 (g) (1) (ii) is clearly to keep *all* non-local hazardous wastes off the roads and out of landfills of the county. The voiding of the prohibition against transportation and disposal of hazardous wastes of interstate origin clearly thwarts the dominant purpose of the ordinance. Thus the county would not be able to advance its dominant purpose in enacting § 11-408 (g) (1) (ii) if it were permitted to enforce the ordinance only against waste originating in Maryland, but not against waste from outside of Maryland. Section 11-408 (g) (1) (ii) is not severable, therefore, and it must fall entirely. Moreover, to sever the provision as suggested in oral argument, would present serious equal protection issues under Art. 24 of the Maryland Declaration of Rights and the 14th Amendment of the United States Constitution. *See,* Bruce v. Dir., Chesapeake Bay Aff., 261 Md. 585, 601-611, 276 A.2d 200 (1971).

**6.** Section 11-408 (g) (1) reads, in pertinent part, as follows:

"Before engaging in the transport ... of hazardous, toxic and special waste, an application and a license issued by the county must be on file with the county department of inspections and permits. Applications for a license to engage in hazardous and special waste transport ... shall be made to the department of inspections and permits on forms provided by such department and shall be accompanied by a manifest detailing the quantity and quality of the waste. The following conditions and prohibitions shall apply to the transporting ... of hazardous, toxic and special wastes in Anne Arundel County:"

**7.** Section 11-408 (g) (1) (i) states:

"A manifest of all hazardous, toxic and special waste materials shall accompany all shipments while in transit and be retained at the site of disposal."

§ 11-408 (g) (1). Section 11-408 (i) also requires that "[e]ach transporting vehicle of a licensee shall be annually registered and regularly inspected," and subject to a fifty dollar additional registration fee.[8] No details are provided revealing the specific nature or frequency of the requisite vehicle inspections.

The licensing and manifest requirements apply with equal force to all hazardous wastes transported through the county, including hazardous wastes originating in Anne Arundel County. Unlike § 11-408 (g) (1) (ii) dealt with in Part I of this opinion, these provisions do not discriminate against articles in interstate commerce, and so do not fall within the scope of *Philadelphia v. New Jersey, supra.* It is argued, however, that the licensing and manifest requirements impose an impermissible burden on interstate commmerce.

A leading case in the Supreme Court on the subject of state-imposed burdens on interstate commerce is *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). In that case, Arizona required that essentially all cantaloupes grown and offered for sale in the state be packed according to mandatory specifications. The Supreme Court, in reviewing the validity of the measure in the context of whether it unduly burdened interstate commerce, indicated the general approach to follow in making such a determination (*Pike v. Bruce Church, Inc., supra,* 397 U.S. at 142, quoted approvingly in *Philadelphia v. New Jersey, supra,* 437 U.S. at 624):

"Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its

---

**8.** Section 11-408 (i) states:

"The annual license fee for the privilege of transporting permitted hazardous, toxic and special wastes in or through Anne Arundel County shall be one thousand dollars ($1,000.00), and shall include the first registered vehicle, provided that any person may transport, under proper certificate, no more than four (4) emergency transports in any calendar year without obtaining a license. Each transporting vehicle of a licensee shall be annually registered and regularly inspected and shall be subject to an additional registration fee of fifty dollars ($50.00).

> effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."

Having already determined that the county's licensing and manifest requirements apply evenhandedly, the inquiry should now be focused on whether the effects on interstate commerce are only incidental; what the burden imposed on interstate commerce is; what the putative local benefits of the regulations are; whether those benefits might be promoted in some other way with less burden on interstate commerce; and, ultimately, whether the burden on commerce is, in light of the total analysis, clearly excessive in relation to the putative local benefits.

The first of these questions is whether the burden on interstate commerce imposed by the county ordinances may be characterized as direct or incidental. Typically, a regulatory scheme which imposes its burdens directly and purposefully on interstate transporters or the movement of articles in interstate commerce, is characterized as directly burdening interstate commerce. *See, e.g., George W. Bush & Sons Co. v. Malloy,* 267 U.S. 317, 45 S.Ct. 326, 69 L.Ed. 627 (1925); *Buck v. Kuykendall,* 267 U.S. 307, 315, 45 S.Ct. 324, 69 L.Ed. 623 (1925) (opinions by Justice Brandeis striking down Maryland and Washington laws, respectively, which required licenses to operate certain interstate transportation businesses); *Michigan Public Utilities Commission v. Duke,* 266 U.S. 570, 45 S.Ct. 191, 69 L.Ed. 445 (1925) (invalidating a Michigan law similar to the Maryland and Washington laws struck down in the previous two cases cited). On the other hand, a state statute which has been enacted for a purpose other than regulation per se of interstate commerce, but which nonetheless may have some

effects upon interstate commerce, is characterized as a law only incidentally burdening such commerce. *See, e.g., Pike v. Bruce Church, Inc., supra,* 397 U.S. at 142-143; *Shafer v. Farmers Grain Co.,* 268 U.S. 189, 199, 45 S.Ct. 481, 69 L.Ed. 909 (1925) (North Dakota law regulating conditions for purchase and sale of grain). *See also* cases cited in *Shafer v. Farmers Grain Co., supra,* 268 U.S. at 199, nn. 3, 4.

This court, as well as the Supreme Court, has often recognized that distinguishing between incidental and direct burdens on interstate commerce is a starting point of analysis in determining the validity of any state statute which affects such commerce. *See, e.g., Davis v. State,* 283 Md. 358, 369-370, 390 A.2d 1112 (1978); *Governor v. Exxon,* 279 Md. 410, 431-432, 370 A.2d 1102 (1977), *aff'd,* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978).

*Davis, supra,* upheld a statute, partially on the ground that its effects on interstate commerce were incidental to the overriding purpose of the state which was to foster and protect the population of crabs in Maryland waters. Similarly in *Exxon, supra,* we upheld a statute which, *inter alia,* prohibited operation of service stations within the state by oil companies. The law, on its face, regulated intrastate activities, and its burden on interstate commerce was only incidental.

The conclusion to be drawn is that, if the burden on interstate commerce imposed by a state or local statute is only incidental, this is a factor militating in favor of the statute's validity under the Commerce Clause. On the other hand, if the state or local statute directly imposes a burden on interstate commerce, that is a factor militating against validity of the regulation under the Commerce Clause. A determination at the outset that a statute directly imposes a burden on interstate commerce, tips the scales against validity, and substantial and important local purposes, difficult to effectuate in any other way, would have to be adduced in order for a court ultimately to find the ordinance valid.

The burdens imposed by Anne Arundel County's ordinances on those who would transport hazardous wastes

through the county are of the direct variety; they are embodied in the regulations themselves and are directly and purposefully imposed on interstate haulers. The burdens do not arise in the context of a general scheme only incidentally affecting interstate activities, such as that involved in *Governor v. Exxon, supra.* Specifically, the regulations here require each transporter to obtain a license for himself ($1,000) and for each transporting vehicle ($50). In addition, each vehicle must be "frequently" inspected. Since the county does not specify either the nature or frequency of inspections, we presume that the county purports to allow inspections at any time and to any degree.

Furthermore, the licensing and manifest requirements affect equally all transport of hazardous wastes through the county and not simply local operators. Thus, if a hauler in New York wished to transport hazardous wastes to Virginia, and planned to route his vehicle through Anne Arundel County, he would be in violation of the county ordinances if he did not obtain the requisite licenses and file a manifest. And if he did obtain the licenses and file a manifest, every part of his vehicle would be subject to inspection by anyone representing the county. Under the county ordinance, these provisions would apply even to those whose transporting activities in the county were restricted to interstate or state highways, and whose vehicles never travelled on county roads.[9]

In addition, if Anne Arundel County may enact such requirements consistent with the Commerce Clause, so may other counties in Maryland, and counties in every other state as well. If each county has that power to regulate, it follows that each would have authority to enact regulations unique unto itself. Every county, then, could have regulations in this area different from those of every other

---

**9.** We note that the State of Maryland has regulations concerning transportation of hazardous substances too, but that those rules would appear not to apply to the transporter engaged in interstate commerce since they apply only to those who "transport . . . from a source within the State to a facility within the State." Maryland Code (1974, 1981 Cum. Supp.), § 8-1413.2 (1) of the Natural Resources Article.

county. If those other counties enacted regulations in the area, a person transporting hazardous wastes from New York through Maryland to Virginia would be burdened not simply with the responsibility of meeting the requirements of Anne Arundel County, and those of several other counties in Maryland, but of every other local government in every state on his route.

The burdens imposed on interstate commerce by the county's regulations are direct and are very substantial. They necessarily impede the free flow of articles in interstate commerce through the county by imposing broad licensing and inspection requirements on the transporters. Furthermore, while the burden imposed on interstate commerce by Anne Arundel County is alone substantial, if other localities were also to enact regulations in the same area, the resulting cumulative burden on interstate commerce might well be insurmountable.

The county, in its brief, argues that their regulations are not unreasonable or impermissible burdens on commerce because they were enacted in response to "increased citizen complaints and county observations of off-site problems generated by landfills [which] produce a conclusion that there is substantial likelihood or potential for traffic problems and water and soil contamination." The county attorney claims that there were two primary purposes of the ordinances:

"1. To limit traffic and landfill generated problems by reducing truck or vehicle volume on County roads, and to reduce quantities of designated hazardous, toxic and special waste in County landfills; and

2. To measure, by license and gathering of information, the volume and characteristics of hazardous waste carried on the roads of Anne Arundel county and/or deposited in County landfills." [10]

**10.** It should be noted that neither the ordinances themselves nor any proceedings of the County Council or other body have been called to our attention which reflect that these indeed were the actual purposes of the

As previously discussed, the county may not accomplish its first objective by prohibiting transportation through and disposal in the county of wastes not originating in the county. As for the second objective, there are other means presently available for the county to determine the volume and characteristics of wastes transported and disposed of in the county other than by the county's scheme.

The federal Department of Transportation (D.O.T.), pursuant to § 1804 of the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 *et seq.,* has issued detailed and comprehensive regulations governing transportation of hazardous wastes. 49 C.F.R. § 171. These regulations apply expressly to all interstate motor vehicle and vessel carriage of hazardous wastes and to intrastate carriage under certain circumstances. 49 C.F.R. § 171.1. The regulations mandate that shipping papers describe hazardous materials which are transported. In addition, Environmental Protection Agency (E.P.A.) regulations, 40 C.F.R. §§ 261-267, require that persons who transport hazardous wastes, and who are subject to the D.O.T. regulations, must carry a manifest prepared by the generator of the hazardous waste. 40 C.F.R. §§ 262.20-23. The manifest must describe the contents of the shipment in accordance with the detailed requirements of the D.O.T. regulations at 49 C.F.R. § 172.202-.204. The D.O.T. regulations also require that the E.P.A. manifest be carried by all transporters of the waste and be retained by each of them, the shipper and the designated final recipient of the wastes. 49 C.F.R. § 172.205. Finally, the D.O.T. has issued detailed safety regulations covering highway carriage of hazardous goods, and specifically pertaining to labeling, 49 C.F.R. § 172.300-.558, packaging, 49 C.F.R. § 173.1-.1300, and the vehicles in which they are carried, 49 C.F.R. § 177.800-.870.

The State of Maryland also administers a hazardous waste transportation and disposal program.[11] The State law

___

county in enacting Bill Nos. 158-79 and 159-79. We shall assume, for purposes of this case, that the county attorney's statements do accurately reflect the purposes of the county.

11. The State program would appear to be valid and authorized pursuant to 49 U.S.C. § 1811; 42 U.S.C. § 6941-49; 40 C.F.R. § 256; etc. As stated at

requires, *inter alia,* that a producer of hazardous waste must label each shipment, and must provide the hauler with a manifest, which he must carry, detailing the contents of each shipment. Code (1974, 1981 Cum. Supp.), § 8-1413.2 (1) and § 8-1413.2 (m) (2) of the Natural Resources Article. The statute also provides that no person may transport hazardous wastes unless certified by the Department of Health and Mental Hygiene. In addition, no vehicle may be used to transport hazardous waste within the State unless the vehicle is certified by the Department of Health and Mental Hygiene. § 8-1413.2 (1) of the Natural Resources Article.

Thus, the local ordinances would not appear to be necessary for Anne Arundel County to accomplish its second series of objectives, namely to have knowledge of the nature of hazardous substances being transported through the county. Between the State and federal laws and regulations, all transportation of hazardous substances through the county is already subject to the type of controls and requirements which the county seeks to impose through the portions of § 11-408 (g) (1) dealing with transportation. Thus the county's interests "could be promoted as well with a lesser impact on interstate activities," *Pike v. Bruce Church, Inc., supra,* 397 U.S. at 142.

We conclude that the portions of Anne Arundel County Code § 11-408 (g) (1), § 11-408 (g) (1) (i), and § 11-408 (i), although perhaps enacted to advance laudable local purposes, pose undue burdens on interstate commerce and thus must fall. This decision comports with the tenor of Supreme Court cases in this area. In *Bibb v. Navajo Freight Lines, Inc.,* 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959), for example, the Supreme Court struck down an Illinois statute which required a special design of mudguards on trucks traveling through the state as a safety device. While pointing out that "safety measures carry a strong presumption of validity when challenged in court," *id.* at 524, the court nevertheless held that this particular statute was a

note 9, *supra,* the transportation portions of the State laws apply only to shipments to and from points within the State.

nondiscriminatory local safety measure which placed an unconstitutional burden on interstate commerce. *Id.* at 529. The court found that the regulations would seriously interfere with the operations of interstate haulers, who transfer the same trailer from tractor to tractor, in moving the trailer across the nation. In addition, the court pointed out that the Illinois regulation conflicted with an Arkansas regulation on the same subject, and that the conflict suggested that

> "this regulation of mudguards is not one of those matters 'admitting of diversity of treatment, according to the special requirements of local conditions.'" (*Ibid., quoting* Chief Justice Hughes in *Sproles v. Binford,* 286 U.S. 374, 390, 52 S.Ct. 581, 76 L.Ed. 1167 (1932)).

*See also Southern Pac. Co. v. State of Arizona,* 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945).

We conclude that regulating transportation of hazardous wastes moving in interstate commerce is not a subject admitting of such "diversity of treatment" as to enable every county in this or other states to enact its own rules.[12] Thus the provisions of § 11-408 (g) (1), § 11-408 (g) (1) (i) and § 11-408 (i) of the county ordinances are void to the extent that they apply to the transportation of hazardous wastes.

### III.

We agree with the circuit court, however, that the remaining portions of § 11-408 (g) (1) and § 11-408 (g) (1) (i), requiring a license to *dispose* of hazardous waste in the county, and requiring that the cargo manifest be retained at the dumpsite, are valid regulations. Once the discriminatory restrictions of § 11-408 (g) (1) (ii) are eliminated, the licensing and manifest requirements of § 11-408 (g) (1) and § 11-408 (g) (1) (i) apply across the board to all hazardous

---

**12.** It may be quite another matter for a *State* to impose regulations in this area if consistent with the provisions cited at note 11, *supra.*

waste disposed of in Anne Arundel County, and thus do not discriminate against waste from sources outside of the county.

Moreover, unlike the transportation requirements dealt with in Part II above, these disposal requirements do not pose an unreasonable burden on interstate commerce. In fact, the provisions affect articles in interstate commerce at the point at which they are taken out of the stream of commerce and are laid to rest. When viewed in juxtaposition to the legitimate desire to control and supervise locally the disposal sites and actual disposal of hazardous wastes within the county, the burdensome effects on interstate commerce of the requirements are relatively insubstantial.[13]

## IV.

We also hold that neither federal nor state law preempts the local disposal and siting regulations of § 11-408 (g) (1) and § 11-408 (g) (1) (i). In *Philadelphia v. New Jersey*,

---

**13.** The transportation requirements invalidated in Part II of this opinion, and the disposal requirements dealt with in this Part III, are largely contained in the same sections of the Anne Arundel County Code. Sections 11-408 (g) (1) and 11-408 (g) (1) (i) provide:

"(g) (1) Before engaging in the transport and/or disposal of hazardous, toxic and special waste, an application and a license issued by the County must be on file with the county department of inspections and permits. Applications for a license to engage in hazardous and special waste transport and/or disposal shall be made to the department of inspections and permits on forms provided by such Department and shall be accompanied by a manifest detailing the quantity and quality of the waste. The following conditions and prohibitions shall apply to the transporting and/or disposal of hazardous, toxic and special wastes in Anne Arundel County:

(i) A manifest of all hazardous, toxic and special waste materials shall accompany all shipments while in transit and be retained at the site of disposal."

Unlike § 11-408 (g) (1) (ii), prohibiting transportation and disposal of only *foreign* hazardous waste in the county, which we found not to be severable between its applications to interstate and intrastate commerce, the above-quoted provision is clearly severable in its applications to disposal as opposed to transportation of hazardous wastes. *See* note 5, *supra*. It is evident from the language of the provision that the county council had two dominant purposes in enacting § 11-408 (g) (1): to regulate, through the means of licensing, disposal and transportation of hazardous waste. If either one or the other were to be found invalid, the other purpose could still be achieved

*supra,* 437 U.S. at 620, n. 4, the court commented on the subject, stating that "Congress expressly has provided that 'the collection and disposal of solid wastes should continue to be primarily the function of State, regional and local agencies . . .,' " *quoting* 42 U.S.C. § 6901 (a) (4). The State of Maryland, in turn, has apparently left open, to some degree, the field of local regulation in this area to counties. Although prior to 1980 a very strong case for preemption by occupation might have been made, with enactment in that year of the Hazardous Waste Facility Siting Program, codified at Code (1974, 1981 Cum. Supp.), § 3-701 through § 3-713 of the Natural Resources Article, the Legislature has indicated its intent that counties may under certain circumstances enact their own hazardous waste disposal programs. Specifically, § 3-705 of the act expressly preempts local legislation on the subject of hazardous waste transportation and disposal if the operator of a disposal site obtains a State-issued Certificate of Public Necessity. Browning-Ferris does not have such a certificate, and therefore is subject to local regulation. If it obtained a certificate it would apparently be completely exempt from local ordinances such as those before us.

It seems clear, therefore, that by virtue of § 3-701 et seq., the Legislature intended to permit local regulation of disposal of hazardous wastes where the local measures are not in conflict and are not expressly preempted by State law.

## V.

Browning-Ferris also challenges the county ordinances insofar as they regulate the disposal and transportation of radioactive materials, § 11-408 (g) (1) (iii) and § 11-408 (h). However, because it appears from the record that Browning-Ferris neither transports through nor disposes in Anne Arundel County any radioactive materials covered by

---

effectively. Thus the provision lends itself to severability. We believe that had the county council known that one portion would be found invalid, it would still have enacted the other portion.

the county regulations, Browning-Ferris is without standing to challenge these portions of the ordinances.

## VI.

To summarize, we hold that Anne Arundel County Code, § 11-408 (g) (1) (ii), is invalid in its entirety because it overtly discriminates against articles in interstate commerce. We further hold that those portions of § 11-408 (g) (1), § 11-408 (g) (1) (i) and § 11-408 (i), regulating the *transportation* of hazardous wastes, are unconstitutional in light of the burden which the place on interstate commerce.[14] On the other hand, §§ 11-408 (g) (1) and 11-408 (g) (1) (i), to the extent that they regulate the *disposal* of hazardous waste in the county, are valid. We express no opinion as to the validity of § 11-408 (g) (1) (iii) and § 11-408 (h) which seek to regulate the transportation and disposal of radioactive materials in the county. Upon remand, the declaratory judgment and injunction should be modified to reflect the determinations made in this opinion.

> *Judgment of the Circuit Court for Anne Arundel County vacted, and case remanded for further proceedings consistent with this opinion.*
>
> *Each party to pay one-half of the costs.*

---

**14.** As earlier pointed out, the circuit court invalidated these portions of the ordinances on federal preemption rather than commerce clause grounds. In our view, there was an insufficient basis for this holding by the circuit court.