**SHAYNE BROS., INC. and United Disposal Corporation, Plaintiffs,**

v.

**PRINCE GEORGE'S COUNTY, MARYLAND, Defendant.**

**Civ. No. H–82–2354.**

United States District Court, D. Maryland.

Feb. 9, 1983.

George Beall, Jefferson V. Wright and Miles & Stockbridge, Baltimore, Md., for plaintiffs.

Robert B. Ostrom, County Atty., and John T. Beamer, II, Associate County Atty., Upper Marlboro, Md., for defendant.

ALEXANDER HARVEY, II, District Judge:

In this civil action, two firms which haul trash and refuse are asking this Court to declare unconstitutional or inapplicable two ordinances of Prince George's County, Maryland. Because of the effect on their business of the County's recent efforts to enforce these ordinances, plaintiffs filed with their complaint a motion for a Temporary Restraining Order and for a preliminary injunction. Following a brief hearing, Judge Jones denied the application for a Temporary Restraining Order. Thereafter, following several conferences with the Court, it was agreed pursuant to Rule 65(a)(2), F.R.Civ.P., that the trial of this

action on the merits should be advanced and consolidated with the hearing on the motion for a preliminary injunction. An Order to that effect was accordingly entered by the Court.

The case came on for trial before the Court sitting without a jury. Several witnesses testified, and a number of exhibits were admitted in evidence. In addition, the depositions of the witnesses Jones, Langello and Hanin have been made a part of the record in the case.

The facts giving rise to the dispute in this case are as follows. There are presently two landfill sites located in Prince George's County which are capable of receiving and authorized to receive solid waste. These facilities are known as the Brown Station Road Landfill and the Sandy Hill Sanitary Landfill.

The Brown Station Road facility is located approximately two miles northwest of the town of Upper Marlboro, Maryland. It was opened in March 1968 and is owned and operated by the Prince George's County Office of Urban Services, Department of Public Works and Transportation. The landfill occupies a site of approximately 850 acres, and has an estimated useful life which will extend until the year 2000, if a pending application before a State agency is approved.

The Sandy Hill facility is situated just north of Bowie, Maryland. It was acquired in 1977 and is presently owned by the Maryland National Capital Park and Planning Commission, a bi-county agency of Prince George's and Montgomery Counties. The Sandy Hill landfill is operated under a contract with Waste Management, Inc., a commercial concern. This facility occupies a site of approximately 280 acres and has an estimated useful life which extends until late 1989.

A person or entity seeking to dispose of trash or refuse in either of the abovementioned landfills is charged a tipping or user's fee. For fiscal year 1983, the fee at both facilities is $15.00 per ton for general refuse.

Shayne Bros., Inc. (hereinafter "Shayne") and United Disposal Corporation (hereinafter "United"), the two plaintiffs, are corporations engaged in the business of trash and refuse collection, transportation and disposal. Both plaintiffs are District of Columbia corporations and are wholly owned subsidiaries of SCA Services, Inc. They handle refuse generated both from within and from without Prince George's County.

Shayne presently maintains approximately thirty separate refuse collection routes within Prince George's County. The approximate geographical breakdown of the sources of Shayne's total revenue is as follows: (1) Prince George's County—50%; (2) the District of Columbia—35%; (3) Virginia—14%; and (4) Anne Arundel County—1%. Shayne has a total of thirty-three trucks for which trash collection and disposal permits have previously been issued by defendant.

United collects, transports and disposes of trash and refuse generated by commercial as well as residential customers. In Prince George's County, United has mainly functioned as a back-up service to Shayne when the latter could not service its customers on a particular day. United has contracts with customers from Montgomery and Howard Counties, and, until recently, has maintained as many as 75 to 100 contracts with customers located in Prince George's County. United presently has four trucks which have been licensed by defendant for trash collection and disposal.

Beginning in June 1982, plaintiffs received notices from the Chief of the Bureau of Urban Services, Department of Public Works and Transportation of Prince George's County, stating that certain of their trucks had violated §§ 21–122 and 21–123 of the Prince George's County Code and that therefore the licenses for these trucks to operate in the County were being revoked. These revocation decisions were subsequently affirmed in hearings before the County health officer. As of December 1, 1982, Shayne has had five licenses revoked and United one.

The Ordinances in question, which are a part of the Prince George's County Code, are as follows:

§ 21–122. *Transportation of Refuse from Outside State*

No trucks or other vehicles shall transport from without the State trash or refuse to a dump or landfill within this County, unless authority has been granted by the Council and County Executive.

§ 21–123. *Use of Facilities by Neighboring Jurisdictions*

Neighboring or adjacent jurisdictions and municipalities in the State shall obtain the consent of the Council before using disposal facilities in this County.

The County's efforts to enforce these Ordinances have been substantially accelerated over the past three years, partly because of an increased awareness on the part of County officials of both the political difficulty involved in obtaining additional landfill space within the County and the finite capacity of the existing landfills. Moreover, in 1981, the fees charged by Montgomery County for the use of their landfills were increased, creating an incentive for businesses in the general area to use the facilities situated in Prince George's County.

Plaintiffs filed suit in this Court on August 12, 1982, seeking declaratory and injunctive relief. Named as the sole defendant is Prince George's County, Maryland. On August 13, 1982, Judge Jones held a hearing on the motion for a Temporary Restraining Order. Although noting that plaintiffs' chances of success on the merits were good and that a strong argument could be made that § 21–123 did not by its terms apply to these plaintiffs, Judge Jones, in an oral opinion, denied the motion for a Temporary Restraining Order, concluding that plaintiffs had not met their burden of showing an entitlement to the extraordinary relief represented by a Temporary Restraining Order.

Plaintiffs contend (1) that § 21–122 is violative of the Commerce Clause of the United States Constitution, U.S. Const. Art. I, § 8, cl. 3; (2) that § 21–123 is, on its face, inapplicable to plaintiffs because it prohibits actions only of "neighboring or adjacent jurisdictions or municipalities;" (3) that § 21–123, if applicable to plaintiffs, is void for vagueness; (4) that § 21–123, if applicable to plaintiffs, places an undue burden on interstate commerce and is therefore violative of the Commerce Clause; and (5) that § 21–123, if applicable to plaintiffs, violates the equal protection guarantees of both federal and state law.

Essentially, the question presented in this case is whether plaintiffs, under existing provisions of the Prince George's County Code, may bring trash and refuse from outside the County and deposit such waste at landfills within the County. Under §§ 21–122 and 21–123, plaintiffs may legally collect trash and refuse from within the County and, pursuant to existing licenses issued to their trucks, may deposit such wastes at landfills within the County. By this suit, plaintiffs claim that they have the right to collect wastes from neighboring jurisdictions for transport into and deposit at proper locations in Prince George's County.

I

■ The primary constitutional question presented is whether § 21–122 violates the Commerce Clause of the Constitution. The principal case relied on by plaintiffs is *City of Philadelphia v. New Jersey,* 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). In that case, the Supreme Court found a New Jersey statute which prohibited the importation of most "solid or liquid waste which originated or was collected outside the territorial limits of the State * * *" to be violative of the Commerce Clause of the United States Constitution.

In analyzing the constitutionality of the statute, the Court, in a cogent opinion written by Justice Stewart, concluded that the interstate movement of wastes constitutes "commerce" within the meaning of the Commerce Clause and that any effort to restrict such movement is subject to constitutional scrutiny because all objects of interstate trade merit Commerce Clause pro-

tection. *Id.* at 622–623, 98 S.Ct. at 2535. The opinion cited *H.P. Hood & Sons, Inc. v. DuMond,* 336 U.S. 525, 537–538, 69 S.Ct. 657, 664–65, 93 L.Ed. 865 (1949), for the proposition that the states are not separable economic units. The *DuMond* case had quoted *Baldwin v. Seelig,* 294 U.S. 511, 527, 55 S.Ct. 497, 502, 79 L.Ed. 1032 (1935), for the principle "that one state in its dealings with another may not place itself in a position of economic isolation." After noting the alertness of the Supreme Court to the evils of "economic isolation" and protectionism, the Court analyzed the New Jersey statute and concluded that it was a protectionist measure which was violative of the Commerce Clause. Justice Stewart explained that while New Jersey could protect its economy and environment by controlling the flow of all wastes into the State's landfills, it was impermissible to discriminate against out-of-state wastes solely on the basis of place of origin. Citing previous decisions of the Supreme Court holding that a State may not provide its residents a preferred right of access to natural resources located within the State, the Court found the New Jersey statute to be objectionable because it imposed "on out-of-state commercial interests the full burden of conserving the State's remaining landfill space." *Id.,* 437 U.S. at 628, 98 S.Ct. at 2537. The fact that the scarce natural resource and the article of commerce were different was not viewed by the Court as an important distinction. Rather, the crucial factor was "the attempt by one State to isolate itself from a problem common to many by erecting a barrier against the movement of interstate trade." *Id.*

More recent decisions applying the *City of Philadelphia* principles have invalidated several state and county enactments similar to the one now before this Court. The Maryland Court of Appeals struck down an Anne Arundel County ordinance which absolutely prohibited disposal in and transportation through the County of various hazardous wastes. *Browning-Ferris, Inc. v. Anne Arundel County,* 292 Md. 136, 438 A.2d 269 (1981). The Court of Appeals found *City of Philadelphia* to be dispositive,

concluding that "the County may not attempt to avoid what amounts to a problem of state and national scope by cutting itself off from the rest of the country." *Id.* at 142–143, 438 A.2d 269. In *People of State of Illinois v. General Electric Company,* 683 F.2d 206 (7th Cir.1982), the Illinois Spent Fuel Act, which prohibited shipment of spent nuclear fuel into the State for storage but which did not prohibit intrastate shipment or storage, was held by the Seventh Circuit to violate the Commerce Clause. The Court recognized that the "efficient disposal of wastes is as much a part of economic activity as the production that yields the wastes as a byproduct, and to impede the interstate movement of those wastes is as inconsistent with the efficient allocation of resources as to impede the interstate movement of the product that yields them." 683 F.2d at 213. Another similar case is *Dutchess Sanitation Service, Inc. v. Town of Plattekill,* 51 N.Y.2d 670, 435 N.Y.S.2d 962, 417 N.E.2d 74 (1980), in which a town ordinance forbidding anyone other than residents or those who conducted an established business in the town from dumping out-of-town refuse was held to be violative of the Commerce Clause.

After considering the pertinent authorities, this Court concludes that the *City of Philadelphia* case is dispositive here as to § 21–122. That case clearly holds that an Ordinance of this sort, which on its face prohibits the use of a local landfill by out-of-state interests, runs afoul of the Commerce Clause.

Defendant argues that sound reasons exist for legislation of this sort which seeks to reserve landfills within the County for the sole use of County residents. The County's existing landfill sites will be exhausted within a decade or so and available sites within the County are being diminished. Similar arguments were advanced and rejected by the Supreme Court in the *City of Philadelphia* case. Indeed, one of the express purposes for enactment of the New Jersey statute was "that the available and appropriate landfill sites within the State are being diminished * * * " 437 U.S. at

625, 98 S.Ct. at 2536. The Supreme Court assumed that a State has "every right to protect its residents' pocketbooks as well as their environment", and that a State "may pursue those ends by slowing the flow of *all* waste into the State's remaining landfills, even though interstate commerce may incidentally be affected." 437 U.S. at 626, 98 S.Ct. at 2536. However, the Court made clear that whatever the State's ultimate purpose, "it may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently." 437 U.S. at 626–627, 98 S.Ct. at 2537. In this case, it is conceded that waste brought by plaintiffs from outside the State is essentially the same as that collected within Prince George's County.

In attempting to distinguish *City of Philadelphia,* defendant relies on footnote 6 of the opinion in which the Court stated: "We express no opinion about New Jersey's power, consistent with the Commerce Clause, to restrict to state residents access to state-owned resources, * * * " 437 U.S. at 627, n. 6, 98 S.Ct. at 2537, n. 6. But § 21–122 does not limit its restrictions to state-owned resources. The prohibition in this Ordinance applies on its face to all dumps or landfills within the County, whether privately owned or County-owned. As the Supreme Court made clear in *City of Philadelphia,* a state or county may not accord its own inhabitants a preferred right of access over consumers in other states to natural resources such as dumps or landfills located within its borders. 427 U.S. at 627, 98 S.Ct. at 2537.

Defendant further argues that the County was performing a proprietary rather than a regulatory function in enacting § 21–122, and that such functions are exempt from scrutiny under the Commerce Clause. In support of this argument, defendant relies on *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976), and *Reeves, Inc. v. Stake,* 447 U.S. 429, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980). Both of those cases on their facts are inapposite here. In both

cases, the State involved had entered the marketplace and had not sought to prohibit the flow of commerce or to regulate the conditions under which it might occur. In this case, the County has sought to enact a comprehensive regulatory scheme for the use of landfills within its borders, the effect of which is to prohibit the flow of commerce from without the State.

The *Hughes* case was decided two years before *City of Philadelphia* and was distinguished in footnote 6 of the latter opinion. *See* 437 U.S. at 627, n. 6, 98 S.Ct. at 2537, n. 6. In the *Reeves* case, decided two years after *City of Philadelphia,* the Supreme Court specifically distinguished *City of Philadelphia* on its facts because the product involved in *Reeves* was not a natural resource like a landfill site. *See* 447 U.S. at 443, 100 S.Ct. at 2280. The facts here are remarkably similar to those before the Court in *City of Philadelphia,* in which the Court characterized legislation of this sort as protectionist and regulatory.

Defendant's reliance on *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), is clearly misplaced. In that case, the Supreme Court addressed the issue whether Congress had exceeded its powers under the Commerce Clause by enacting the 1974 amendments to the Fair Labor Standards Act.

In the concluding passage in his opinion in *City of Philadelphia,* Justice Stewart said the following (437 U.S. at 629, 98 S.Ct. at 2538):

Today, cities in Pennsylvania and New York find it expedient or necessary to send their waste into New Jersey for disposal, and New Jersey claims the right to close its borders to such traffic. Tomorrow, cities in New Jersey may find it expedient or necessary to send their waste into Pennsylvania or New York for disposal, and those States might then claim the right to close their borders. The Commerce Clause will protect New Jersey in the future, just as it protects her neighbors now, from efforts by one State to isolate itself in the stream of

interstate commerce from a problem shared by all.

These observations apply with equal force in this case. If Prince George's County may today close its borders to trash and refuse from Virginia and the District of Columbia, then the latter jurisdictions can likewise close their borders to out-of-state waste from Prince George's County or from any other County in Maryland. The Commerce Clause protects all of these jurisdictions from efforts by adjacent states or counties to isolate themselves in the stream of interstate commerce from a problem shared by all.

For these reasons, this Court concludes that § 21–122 violates the Commerce Clause of the Constitution.

## II

Insofar as § 21–123 is concerned, it is not even necessary for the Court to reach the constitutional arguments for a decision in this case. The plain meaning of the language used compels the conclusion that § 21–123 does not apply to private corporations such as these two plaintiffs. The prohibition is applicable solely to "neighboring or adjacent jurisdictions and municipalities in the State." Neither of the plaintiffs is obviously a jurisdiction or municipality in the State. They are therefore not subject to any restriction of their activities based on § 21–123.

This construction of the ordinance is particularly compelling when the language used is compared to § 21–122, which immediately precedes it. That Section specifically states that "no trucks or other vehicles shall transport from without the State trash or refuse" to a County landfill. This language undoubtedly applies to trucks and vehicles of the plaintiffs. Had it been intended that § 21–123 should have the broad meaning ascribed to it by the defendant here, the language could very simply have tracked § 21–122 and stated "No trucks or other vehicles shall transport from without the County trash or refuse" to a County landfill. No such language was used, and it is therefore apparent that § 21–123, unlike

§ 21–122, was not intended to apply to private firms. It may reasonably be inferred that § 21–123 was enacted because Prince George's County did not want agents or employees of neighboring counties or municipalities to use Prince George's County disposal facilities. No similar prohibition was placed on private firms collecting refuse from another County. The language is plain and unambiguous. The clear meaning of the words used therefore indicates that plaintiffs are not barred by § 21–123 from transporting trash or refuse from another County in Maryland to a landfill in Prince George's County.

Accordingly, plaintiffs are entitled to a declaratory judgment to such effect and to a permanent injunction prohibiting defendant from enforcing § 21–123 against them.

## III

In view of the Court's conclusion (1) that § 21–122 is unconstitutional as violative of the Commerce Clause and (2) that § 21–123 is not applicable to plaintiffs' activities, there is no need to consider the other arguments advanced by plaintiffs.

Plaintiffs are entitled to a declaratory judgment and to a permanent injunction. Counsel should confer and submit an appropriate Order within ten days.