The Honorable Charlie Cole Chaffin State Senator Route 3, Box 1057 Benton, AR 72015
Dear Senator Chaffin:
This is in response to your request for an opinion on the constitutionality of a proposed bill to regulate the transporting and depositing of solid waste in Arkansas landfills. The bill regulates only waste transported more than one hundred miles, whether interstate or intrastate. Specifically, you are concerned primarily that the bill may violate the interstate commerce clause of the United States Constitution.
It is my opinion that the bill places an impermissible direct burden on interstate commerce, even though the seemingly evenhanded one hundred mile requirement operates to veil its discriminatory face.
Frequent reference to specific provisions of the bill is necessary in the analysis which leads to the conclusion above. The bill begins by stating the title of the proposed act which is as follows:
 AN ACT FOR THE PURPOSE OF REGULATING THE TRANSPORTATION AND DEPOSIT OF WASTE MATERIALS IN LANDFILLS LOCATED WITHIN THE BOUNDARIES OF THE STATE OF ARKANSAS.
The legislative finding and declaration of policy is contained in Section 2 of the proposed act which provides:
 It is hereby determined and declared as a matter of this legislature finding that, since improper and inadequate transfer and disposal of Waste Materials practices create Public Health Hazards, Environmental Pollution and Economic Loss, it is the purpose of this Act to regulate these practices.
In spite of this legislative purpose, the proposed act then goes on to regulate only waste which is transported more than one hundred miles. The major aspects of the bill which are significant from a constitutional standpoint include: (1) requiring a bill of lading to accompany all waste which travels over one hundred miles; (2) requiring an affidavit from the Department of Pollution Control and Ecology (or similar agency) from each state of origin declaring that such waste is safe to be deposited in a landfill; (3) requiring information as to whether waste traveling over one hundred miles has been rejected at any other landfill, and the reasons therefore; (4) requiring vehicles transporting waste one hundred miles or more to be licensed and equipped so as to avoid leakage; (5) imposing what appears to be strict liability upon owners of waste for damages caused by waste materials transported more than one hundred miles; (6) requiring permission from the Department of Pollution Control and Ecology before Arkansas landfills can accept waste materials originating more than one hundred miles away; (7) requiring that out of state waste be deposited in landfills separate from in state waste; and (8) imposing fees upon the owners of waste materials being transported more than one hundred miles to cover the costs of permits, inspections, and record keeping.
These provisions must be analyzed under the relevant commerce clause test set out by the U.S. Supreme Court. The standard to be applied in this type of commerce clause analysis is set out in PHILADELPHIA v. NEW JERSEY, 437 U.S. 617 (1978):
 The opinions of the Court through the years have reflected an alertness to the evils of "economic isolation" and protectionism, while at the same time recognizing that incidental burdens on interstate commerce my be unavoidable when a State legislates to safeguard the health and safety of its people. Thus, where simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected. [Citations omitted]. The clearest example of such legislation is a law that overtly blocks the flow of interstate commerce at a State's borders. Cf. WELTON v. MISSOURI, 91 U.S. 1275, 23 L.Ed. 347. But where other legislative objectives are credibly advanced and there is no patent discrimination against interstate trade, the Court has adopted a much more flexible approach, the general contours of which were outlined in PIKE v. BRUCE CHURCH, INC., 397 U.S. 137, 142, 25 L.Ed.2d 174, 90 S.Ct. 844.
`Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effect on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.'
437 U.S. at 623, 624.
PHILADELPHIA v. NEW JERSEY, SUPRA, is the Court's most recent pronouncement of the law on commerce clause restrictions as prohibiting state regulation of the transportation of solid waste.
In PHILADELPHIA, the State of New Jersey had enacted a statute which provided:
`No person shall bring into this state any solid or liquid waste which originated or was collected outside the territorial limits of the State, except garbage to be fed to swine in the State of New Jersey, until the commissioner [of the State Department of Environmental Protection] shall determine that such action can be permitted without endangering the public health, safety and welfare and has promulgated regulations permitting and regulating the treatment and disposal of such waste in this state.' NJ Stat. Ann. 13:11-10 (West Supp. 1978) [Footnote omitted].
437 U.S. at 618, 619.
The Court, after setting out the constitutional test to be applied, held that this statute was a direct discriminatory burden on interstate commerce, stating:
 Thus, it does not matter whether the ultimate aim of ch 363 is to reduce the waste disposal costs of New Jersey residents or to save remaining open lands from pollution, for we assume New Jersey has every right to protect its residents' pocketbooks as well as their environment. And it may be assumed as well that New Jersey may pursue those ends by slowing the flow of ALL waste into the State's remaining landfills, even though interstate commerce may incidentally be affected. But whatever New Jersey's ultimate purpose, it may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently. Both on its face and in its plain effect, ch 363 violates this principle of nondiscrimination.
437 U.S. at 626, 627.
The scheme envisioned by the Arkansas proposed bill is not as constitutionally egregious as the statute in PHILADELPHIA. It does not block all out of state waste from entering Arkansas, but regulates only waste which travels more than one hundred miles whether in interstate commerce, or entirely within the State of Arkansas. Nevertheless, if the bill constitutes simple "economic protectionism" or is patently discriminatory against interstate commerce it will be struck down. If not, we must determine whether the bill "regulates evenhandedly to effectuate a legitimate local public interest," and if so whether the burden on interstate commerce is only "incidental." PIKE v. BRUCE CHURCH, INC., SUPRA. clearly excessive in relation to the "putative local benefits," and whether the interest to be promoted could be as well advance with a lesser impact on interstate activities.
In analyzing these questions, resort to post Philadelphia lower court decisions applying these principles is helpful. In three cases since the PHILADELPHIA decision, lower courts have struck down regulations affecting the flow of solid waste. SHAYNE BROS., INC. v. PRINCE GEORGES COUNTY MD., 556 F. Supp. 182 (D.Md. 1983); BROWNING-FERRIS, INC. v. ANNE ARUNDEL CTY, MD., 292 Md. 136,438 A.2d 269 (1981); and DUTCHESS SANITATION SERVICE v. TOWN OF PLATTEKILL, 417 N.E.2d 74 (N.Y. 1980). In SHAYNE, a county enacted a local ordinance prohibiting the transportation from outside the state of any solid waste into the county without authority granted by county executives. The district court struck down the statute, relying on the Supreme Court's holding in PHILADELPHIA that discrimination against articles in interstate commerce may not be upheld unless there is some reason apart from the articles' origin to do so. In SHAYNE, the court noted that "[i]n this case, it is conceded that the waste brought by plaintiffs from outside the State is essentially the same as that collected within [the County]." 556 F. Supp. at 186.
DUTCHESS involved the same scenario, except the legislation was a municipal ordinance. Even though the record contained no town, the New York Court of Appeals found that several out-of-state solid waste haulers had hoped to use the town's landfill, and that this fact was enough to evidence a commerce clause violation. The court went on to hold that for purposes of determining the presence of an effect on interstate commerce, both the impact of a particular instance of regulation, and a projection of the cumulative burden that would result if similar regulations were adopted would be considered.
BROWNING-FERRIS, SUPRA, involved a county ordinance regulating the transportation and disposal of hazardous waste. The ordinance prohibited disposal and EVEN transportation of waste through the county which did not originate there. It also required a license for the transportation of such waste through the county, and a license to dispose of such waste in the county. The court struck down the ordinance, finding the flat prohibition against out of county waste transportation and disposal to be patently discriminatory, and forbidden under PHILADELPHIA. The court also found the transportation license requirement unduly burdensome, realizing the possibility that other such local ordinances would compel an interstate hauler of waste to comply with every local ordinance along his route. The court also held that the county could have used much less restrictive means; means that would not so greatly affect interstate commerce, to effectuate its purposes. The court did, however, uphold the licensure requirement for the disposal of hazardous waste within the county, as this provision applied evenhandedly to all waste, whether generated within the county or not.
Thus, it can be seen that state and local legislation in this area will be struck down if it is directed at, or operates so as to burden interstate commerce at a greater rate than intrastate or intra-county activity.
Reference has been made above to relevant case law striking down legislation in the area of solid waste transportation and disposal as violative of the commerce clause. We now turn our attention to relevant case law upholding such legislation in order to arrive at a conclusion concerning the constitutionality of the proposed bill. Cases upholding solid waste regulation fall, for our purposes, into three categories: 1) those cases which have upheld legislation against anti-trust violations, and involved no commerce clause challenge,[1] 2) those cases which involve regulation only of access to publicly owned landfill facilities, and thus are exempt from the restrictions of the commerce clause on the "market participant theory";[2] and 3) those cases which require more discussion below.
The "market participant" theory excludes governmental action from the strictures of the proprietary fashion, as a "market participant" regulating access to public facilities rather than private ones. It should be noted, however, that in REEVES, INC. v. STAKE,447 U.S. 429 (1980), the United States Supreme Court has intimated that landfills may be classified as a "natural resource" which states may not "hoard". There is thus, some authority for the proposition that the "market participant" theory has no applicability in the case of landfills, and that as such, the commerce clause remains an obstacle to the regulation of the use of even publicly owned landfills. In any event, the bill in question in this instance regulates both public and private landfills, and therefore the "market participant" theory is unavailable as a defense to a commerce clause challenge. Three decisions of lower courts upholding solid waste regulation merit separate discussion. EVERGREEN WASTE SYSTEMS v. METRO SERVICE DISTRICT, 820 F.2d 1482 (9th Cir. 1987), represents the affirmance of the district court EVERGREEN decision, which upheld the legislation on the "market participant" theory. The Ninth Circuit, however, did not affirm on that ground. It simply found that because the ordinance, (which was enacted by a three-county waste service district, and banned all waste from outside the district from being deposited at the district landfill), affected only one landfill in the state, that the statute was not facially discriminatory; the burden on interstate commerce was slight; and the local benefits outweighed any such burden. The Court also held that the regulation was "evenhanded" because "evenhandedness requires simply that out-of-state waste be treated no differently from most [in state] waste." 820 F.2d at 1484. Because the ordinance excluded all in-state waste outside the three-county service area as well as all out-of-state waste, the court upheld the ordinance.
The second case upholding similar legislation which requires discussion is MONROE-LIVINGSTON SANITARY LANDFILL, INC. v. TOWN OF CALDEONIA, 435 N.Y.S.2d 966, 5, N.Y.2d 679, 417 N.E.2d 78 (1980). In MONROE, a town ordinance was enacted to prohibit the dumping of out-of-town waste at the local privately owned landfill. The New York Court of Appeals held that because there was no evidence that the landfill ever accepted refuse from out of state, the ordinance could not be said to burden interstate commerce at all. It thus upheld the ordinance. A strong dissent in the case points out that the majority opinion ignores the fact that the ordinance prohibits out-of-town waste haulers from offering their business to the landfill in the future. The dissent also cites FRY v. UNITED STATES, 421 U.S. 542 (1975), for the proposition that where legislation conceptually affects interstate commerce, there need be no quantitative impact of the showing.
The final case requiring discussion is GLOUCHESTER COUNTY BOARD OF CHOSEN FREEHOLDERS v. CITY OF PHILADELPHIA, 100 N.J. 134,495 A.2d 49, CERT. DENIED 474 U.S. 1008 (1985). In GLOUCHESTER, a New Jersey private landfill was closed because it was approaching the limits of its capacity. The court, after reviewing the availability of landfill space in the surrounding area, entered an order prohibiting the dumping of solid waste from nearly Philadelphia and most other counties in New Jersey. The court, however, allowed the municipalities in three New Jersey counties to continue to use the landfill up to a specified limit, because they had no alternative dumping site. Those counties were required by the order to begin immediate planning for the construction of alternate sites, and were required to comply with certain recycling requirements in the interim. The Supreme Court of New Jersey upheld the order, finding that it was not discriminatory in purpose or effect, that there were no less restrictive means available, and that the order was fashioned to prevent a real health emergency in the area. The court also concluded that counties other than the three permitted to use the landfill, all had access to other facilities; thus there was a reason for treating waste from these counties differently, a reason apart from the waste's origin.
It is my opinion that the fact of the three cases just discussed are distinguishable from the scheme envisioned under the proposed Arkansas bill. Unlike EVERGREEN, MONROE, and GLOUCHESTER, which involved legislation pertaining to only one landfill, the proposed bill contemplates a state wide plan for regulation of waste which travels only one hundred miles or more. It is a certainty that this legislation, if enacted, would have a substantial impact on interstate commerce. Its effect would be much greater than that found in EVERGREEN, MONROE, and GLOUCHESTER. It is manifest that a state law which affects only commerce traveling more than one hundred miles will affect MOST interstate commerce, while affecting a substantially smaller percentage of intrastate activity.
In analyzing the proposed bill's constitutionality, reference must be made to the tests set out earlier in this opinion. Although it is my opinion that the bill narrowly escapes classification as "simple economic protectionism", it is my opinion that it in effect places a DIRECT burden on interstate commerce. The bill on its face purports to operate "evenhandedly", as the regulations apply to both interstate and intrastate activities. It is my opinion, however, that the effect on interstate commerce is not "incidental". The bill is, in my opinion, calculated to affect interstate commerce.
The most important aspect of jurisprudence in this area, in my opinion, is the Supreme Court's holding in PHILADELPHIA v. NEW JERSEY that a state may not discriminate against articles of commerce coming from outside the state unless there is some reason, APART FROM THEIR ORIGIN, to treat them differently. The proposed bill regulates on the basis of ORIGIN. Waste which travels less than one hundred miles, whether interstate or intrastate, is not subject to regulation under the bill. Why? Is waste which travels more than one hundred miles somehow more inherently harmful than other waste? Are trucks which carry waste which originated more than one hundred miles away more likely to leak than trucks traveling eighty miles? Finally, what possible reason exists for requiring out-of-state waste to be deposited in separate landfills from in-state waste?
In short, the regulations affect primarily INTERSTATE waste, when the legislative finding and intent evidences problems attending the transportation and disposal of ALL waste. It is therefore my opinion that the bill is discriminatory, places an impermissible direct burden on interstate commerce, and could definitely employ means less restrictive on interstate commerce to accomplish its purposes.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
[1] It should be noted that, generally, state action is exempt from the prohibitions of the anti-trust laws. PARKER v. BROWN,317 U.S. 341 (1943); HANCOCK INDUSTRIES v. SCHAEFFER,619 F. Supp. 322 (D.C. Pa 1985); CENTRAL IOWA REFUSE SYSTEMS, INC. v. DES MOINES METROPOLITAN SOLID WASTE AGENCY, 715 F.2d 419 (8th Cir. 1983). Because these cases do not involve the commerce clause, which in my opinion is the largest constitutional obstacle this proposed bill faces, they do not require further discussion.
[2] EVERGREEN WASTE v. METROPOLITAN SERVICE DIST., 643 F. Supp. 127
(D.Or. 1986), aff'd on other grounds, 820 F.2d 1482 (9th Cir. 1987); SHAYNE BROS. INC. v. DISTRICT OF COLUMBIA, 502 F. Supp. 1192 (D.D.C. 1984); LeFRANCOIS v. RHODE ISLAND, 26 Evn. Rep. Cas. (BNA) 2104, (No. 87-3618, R. 1. Sept. 15, 1987); EVERGREEN WASTE SYSTEMS, INC. v. STEVENS, 473 A.2d 12 (Md. Sup. Ct. 1984).