## SKIPJACK COVE MARINA, INC. *v.* BOARD OF COUNTY COMMISSIONERS OF CECIL COUNTY ET AL.

[No. 177, September Term, 1971.]

*Decided February 8, 1972.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Leonard E. Wilson,* with whom were *O. Robert Lidums* and *Wilson & Lidums* on the brief, for appellant.

*Edwin B. Fockler, III,* and *Kenneth A. Wilcox* for appellees.

SMITH, J., delivered the opinion of the Court.

Skipjack Cove Marina, Inc. (Skipjack), appellant here, applied for and was granted a special exception "to locate a marina and motel" in a Shoreline Residential-Recreational R-R zone in Cecil County. It appealed to the Circuit Court for Cecil County and appeals to us because the Board of Appeals of Cecil County (the board) in its order granting the special exception specified that the permission was "to locate 41 slips as indicated on * * * plat [attached to the application]" and because the order granting the special exception was made subject to the restrictions contained in a previous order of the board. It objects to both restrictions. We shall affirm.

Skipjack sees the questions here as whether "the court failed to decide this case within its scope of judicial review" and whether it "should have considered the evidence in the case and in light of such evidence should have declared the conditions imposed to be arbitrary and illegal." We see but a single issue and that is whether the action of the board was illegal.

The application as submitted to the board under date of November 2, 1970, specified that the property owner was John Powell Green, Jr., that the location was "N/shore Sassafras River w of Duffy Creek marina," that the size of the lot was "App 7 Acres," and that the "[p]roposed work" was "Locate a marina & Motel (special exception)." Subsequently, on November 23, 1970, counsel advised the board that Skipjack had "purchased

the Green property" and that "[t]he buffer zones established on the existing property of Skipjack Cove Marina, Inc. [would] not be disturbed."

Reference to *Skipjack Cove Marina v. Co. Comm'rs,* 252 Md. 440, 250 A. 2d 260 (1969), will give a bit better understanding of this case. There it was said:

> "The subject property is bounded on the north and west by the lands of the Kennett Company, Inc., on the north and east by the lands of Harry Rudnick & Sons, on the east and south by the lands of the Duffy's Creek Marina and Robert Green, and the Sassafras River." *Id.* at 443.

The circuit court judge said in this case:

> "The record in the case, including the original papers constituting the entire record in the prior case entitled 'Skipjack Cove Marina, Inc. vs County Commissioners for Cecil County, et al, Law 8082' which went to the Court of Appeals and is reported in 252 Md. 440, reveals that the land in question for which a special exception was requested was formerly known as the 'Green Property' adjoining other property of Skipjack Cove Marina, Inc. Skipjack's predecessors in title had in 1963 obtained a special exception to permit the construction and operation of the marina and in the granting of that special exception certain restrictions and conditions were imposed on an area, designated as 'N' on a plat, lying between other land of the applicant's property and the 'Green Property'. One of the conditions imposed on this area was that it was to be utilized as a park area, 'provided the trees thereon are allowed to remain and only the underbrush to be cleared', thus becoming in effect a buffer zone. In March, 1966, Skipjack exchanged 0.842 acres of its land,

which was part of the 'N' area, for a parcel of the 'Green Property' which had some water-frontage. The 0.842 acre parcel thus became a part of the 'Green Property'. In November 1970 Skipjack purchased the entire 'Green Property' including the 0.842 acres, and the application in this case was for a special exception as to a part of the 'Green Property', including the 0.842 acres.

"It is generally agreed that when Green acquired the 0.842 acre parcel, he took it subject to the conditions imposed by the Appeals Board in 1963, and when Skipjack acquired the Green property, it too took said parcel subject to the conditions and restrictions so imposed. The applicant contends that in granting the special exception for the seven (7) acres of the Green property, there was no longer any need or reason for the conditions and restrictions previously imposed on the 0.842 acre portion of same, because there is no longer any need for a 'buffer zone' to protect the Green property since this property is now a part of the marina complex. Applicant further contends that the restriction imposed on it by the Board limiting it to 41 slips is unjustified, and that such action by the Board of Appeals is arbitrary, capricious, and illegal."

The application here was under the ordinance provision which permitted by special exception in a Shoreline Recreational-Residential R-R zone "businesses catering to marine activities such as commercial boat docks, boat service areas, marine equipment stores, boat storage and construction yards, bait and tackle shops, retail fish and shellfish sales; motels and mobile home camps," with the requirement that "such commercial uses [be] grouped as much as possible in definite centers"; that "existing development [be] protected from undue en-

croachment and harmful effects from such uses by such safeguards as the Board of Appeals [might] provide, provided that in no case [should] a commercial structure be located nearer than one hundred (100) feet to any existing residence or summer home, except that of the owner or operator of a permitted use"; and that "a definite need for such uses in the location proposed [be] shown to exist."

By § 18 of the Cecil County zoning ordinance a special exception is defined as "a use that would not be appropriate generally or without restriction throughout the zone but which, if controlled as to number, area, location, or relation to the neighborhood, would promote the public health, safety, welfare, morals, order, comfort, convenience, appearances, prosperity, or general welfare."

The application for the special exception here was terse. It contained nothing in its text or by way of exhibit, plat or otherwise, showing whether it was desired that the marina have 10 boat slips or 100 boat slips. The difference between the two obviously would have a significant bearing on the evaluation by the board of the extent to which "existing development [should be] protected from undue encroachment and harmful effects from such [use]" by conditions imposed by the board. The record of the examination of James Parcher, the president of Skipjack, by the chairman of the board is as follows:

"Q. Now, how many additional slips are we talking about, getting back to the other application? I see 32 on here, and what, about 10 at the end? A. Talking about nine new proposed slips for the breakwater and 32 on the inside there.

"Q. That is 41. A. That would be 41. At least that is our present contention. That is what we hope to put in within the next couple of weeks. Even that won't go in right away. It takes time. We get probably a portion of it in this next year

and probably some the next following spring. And we would have absolutely no trouble at all filling those."

Just prior to this the board chairman had attempted to elicit from Parcher the number of motel rooms contemplated and had encountered some difficulty in obtaining a precise figure. This led to the sage comment:

> "Well, you see, Mr. Parcher, what I am getting at, in some decisions we have granted blank checks and they have come back to haunt us. You get burned a few times and you become a little gun shy."

The reference in the testimony was to a plat submitted at the board hearing, a plat which showed boat slips but made no reference to parcel "N".

As Judge Marbury said for the Court in *Crowther, Inc. v. Johnson*, 225 Md. 379, 383, 170 A. 2d 768 (1961), repeated in *Brouillett v. Eudowood Plaza*, 249 Md. 606, 608, 241 A. 2d 404 (1968), "conditions upon which a special exception may be granted are set out in the ordinance, and the board is given a wide latitude of discretion in passing upon special exceptions so long as the resulting use is in harmony with the general purpose and intent of the zoning plan and will not adversely affect the use of neighboring properties and the general plan of the neighborhood as provided by the zoning ordinance." The ordinance here specifically authorized the board in granting a special exception to do so "with such conditions and safeguards as are appropriate under the ordinance." It is further authorized "[i]n granting any special exception" to "prescribe appropriate conditions and safeguards in conformity with [that] ordinance."

In *Montgomery County v. Mossburg*, 228 Md. 555, 180 A. 2d 851 (1962), this Court upheld a condition in a special exception that a restaurant close at an hour earlier than it would have otherwise been obliged to close

under the alcoholic beverages license granted to it. Judge (now Chief Judge) Hammond said for the Court:

"He may not, we think, as of right demand an unconditioned special exception." *Id.* at 560.

We see no arbitrary abuse of power on the part of the board when it limited the extent of the proposed special exception to the number of boat slips testified to by the president of the applicant and shown on the exhibit submitted by the applicant. The board in discharging its functions was not obliged in granting the exception to permit an unlimited number of boat slips.

Skipjack argues strenuously that the restriction previously imposed on the "N" area in the prior application should not have been continued by the board on the 0.842 acres of land originally included in the buffer zone which was a part of the land involved in the application here. Its reasoning is that the buffer area was intended for the protection of the Green land now owned by Skipjack and that this land "is obviously not needed as a buffer zone in the middle of Skipjack's marina."

First of all, it must be noted that Skipjack in its application did not request elimination of this restriction. In fact, as has already been noted, the letter of its attorney specified that the buffer zones previously established would not be disturbed, although in fairness it must be said in the light of Mr. Parcher's testimony it may be that the letter was intended to refer to the buffer zone on the remaining land. Secondly, the board did not impose any restrictions here. It only made plain in granting the special exception that it was subject to restrictions that had previously been placed, restrictions that the application did not ask be lifted.

If Skipjack believes it can make out a case for the lifting of the buffer zone restriction, it should make application under the established procedures of the zoning ordinance for that. Then due notice as required by the ordinance to owners of affected property and the public

generally would be given. Skipjack should not be heard to complain because a restriction it did not ask be lifted was not lifted.

In the view we have taken of this case it is not necessary for us to examine the requisites for judicial review of the board's action. Suffice it to say that we see no error on the part of Judge Roney or the board.

*Order affirmed; appellant to pay the costs.*