661 A.2d 682

**HALLE COMPANIES et al.**

v.

**CROFTON CIVIC ASSOCIATION et al.**

No. 129, Sept. Term, 1994.

Court of Appeals of Maryland.

July 17, 1995.

Reconsideration Denied Aug. 17, 1995.

Steven P. Resnick (Kevin Reynolds, on the brief), Annapolis, for petitioner.

Lynn A. Robeson, Asst. County Atty., (Phillip F. Scheibe, County Atty.; Stephen M. LeGendre, Deputy County Atty., all on brief), Annapolis, Warren K. Rich (Rich and Henderson, P.C., on the brief), Annapolis, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

KARWACKI, Judge.

In this case, we shall analyze the authority of the Anne Arundel County Board of Appeals to impose a condition upon the grant of a special exception when that condition was not sought during earlier proceedings before the county administrative hearing officer.

## I

This case originated from applications filed with the Anne Arundel County Department of Planning and Code Enforcement by the Halle Companies and its totally owned enterprise, Chesapeake Terrace (referred to collectively hereafter as "Halle"). Specifically, in 1990, Halle sought administrative approval for sand and gravel landfill operations. Those operations were to be conducted on approximately 108 acres of land located near the intersection of Routes 3 and 424, in Odenton, Maryland.[1] Of the 108 acres subject to the special exception

---

1. The property in question is located nearly two miles northwest of the intersection of Maryland Routes 3 and 424, along Conway Road. It is

request, only 35 acres of previously cleared property was proposed for sand and gravel extraction. Halle also sought approval for rubble landfill operations to be conducted at that same location on approximately 482 acres (including the 108 acres for the sand and gravel landfill). Of the 482 acres, only 150 acres of previously cleared property was contemplated for landfill use, to be accomplished through the sequential filling of a number of small cells on the property. Halle's applications for special exception and variance approval were denied by Anne Arundel County's administrative hearing officer.

Halle appealed that decision to the Anne Arundel County Board of Appeals ("the Board"), which heard the appeal *de novo*, pursuant to § 603 of the Anne Arundel County Charter.[2] Evidence produced at the sixteen administrative hearings held over seventeen months demonstrated that the site was within a resource extraction area on the master plan of the County, was the subject of an existing special exception granted for a sand and gravel operation, and that the subject property had been mined off and on for 40 years. The site was likened to a moonscape, and photographs of the site showed debris, deep ravines, and erosion on the property.

Photographs of the property showed trees falling into eroding ravines which were 30–45 feet deep, abandoned sediment basins, and unclaimed excavation pits. Illegal dumping, target shooting, and hunting regularly occurred on the property. After its site inspection, the Board observed that "because of previous mining which has occurred on this property, the land is cratered virtually up to the property line."

Halle offered expert testimony on subjects including traffic impact and road improvements, environmental protection and wetland preservation, hydrology and ground water contamination, land use planning and development, civil and environmen-

---

bordered on the north by the Little Patuxent River and to the west by the Conrail railroad tracks.

**2.** Anne Arundel County Charter, § 603 provides, *inter alia,* that "[a]ll decisions by the County Board of Appeals shall be made after notice and hearing *de novo* upon the issues before said Board."

tal engineering related to landfill development, and acoustical engineering. Each expert testified at length and addressed the impact of the landfill and sand and gravel operations at the site upon vicinal properties. The County and the protestants claimed that harsh environmental impact on the Patuxent River and the surrounding wetlands and floodplain would result, and further asserted that their primary concern was traffic. Patuxent Road access required truck travel along "a bad curve ... referred to as a reverse horizontal curve," and also "would require disturbing major wetlands." Questions were raised as to "the relationship of the landfill to the 100 year flood plain on Patuxent Road," and the potential threat of Patuxent Road access to residential communities north and west of the site.

Due to these concerns, Halle suggested an alternate access to the site from Conway Road at the first of the Board's sixteen hearings. Conway Road access would alleviate both the wetlands and traffic problems raised by the County and the protestants. It was also a shorter access route, would affect fewer people overall, and would direct the traffic further from the Patuxent River. The County Department of Public Works evaluated the proposed Conway Road access and concluded that such access was preferable because it addressed the traffic and environmental concerns.

The County argued that the Board could not consider the access from Conway Road because Halle could not propose an alternative entrance after having filed the initial appeal. The Board rejected the County's argument:

"Although the County argues that the Petitioners could not suggest this alternative entrance after filing the initial appeal (an argument which this Board rejects), the County also indicated in its closing argument that the Conway Road entrance is a much better choice because it avoids the wetlands and the heavier traffic on Patuxent Road as well as directing the traffic further from the Patuxent River. This Board has often accepted modifications to an initial plan when the modifications were offered during the hearing process. There does not appear to be any reason that the

proposed use of the Conway Road entrance must be rejected by this Board."

After three months of deliberation, an on-site visit by the members of the Board to the property, and a review of the record taken as a whole—consisting of more than 2,000 pages of transcribed testimony and voluminous documents—the Board determined that the landfill would advance the public welfare of the County. It recognized the need for the landfill, concluded that its location was well suited to the use, and determined that the special exception and variance proposals would benefit the vicinal community by reclaiming and restoring previously mined ravines and properties "cratered" up to the property line. Accordingly, the Board granted the special exception and variance requests, subject to eight specific conditions.[3]

Petitioners, several community associations led by the Crofton Civic Association and eighteen individual property owners, sought judicial review of the decision of the Board in the Circuit Court for Anne Arundel County. The circuit court

---

3. Two of the Board's conditions addressed the access issue:

"The special exceptions for a sand and gravel operation and rubble landfill operation are granted with the following conditions:

"1. Patuxent Road shall not be used as an entrance to the operation.

"2. Conway Road is to be used as the entrance to the operations, with the following conditions:

"a. A right turn lane shall be constructed on eastbound Conway Road at Maryland Route 3 to a minimum length of 500 feet.

"b. From the intersection of Patuxent Road and Conway Road to the entrance of the site, the road shall be improved with 12 foot travel lanes and 8 foot shoulders improved to county standards (pursuant to Article 26, Section 3-202(d), Anne Arundel County Code) where the county right-of-way exists. Additionally, the Petitioners shall pursue a diligent course to obtain the right-of-way from private property owners where possible.

"c. The Road improvements on Conway Road from Route 3 to Patuxent Road shall be constructed before any rubble landfill or sand and gravel operation begins; road improvements from the intersection of Conway Road and Patuxent Road to the entrance of the site are to be completed within one year of the start of operations.

"d. The access obtained to the site from Conway Road shall be through a fee-simple right-of-way, not through an easement."

granted Anne Arundel County's motion to intervene and, after oral argument, reversed the decision of the Board, holding that the Board exceeded its *de novo* authority by imposing the Conway Road access as a condition of its special exception and variance approvals, as the Conway Road access went beyond the scope of the original application.

The circuit court concluded that the condition of access from Conway Road was a "so-called" condition and not a proper one, because it in effect substantially augmented the property "touched" by Halle's application:

> "The central question, then, which this Court must resolve is whether the Board had the authority under its "*de novo*" power to address the Conway Road access even though it was not part of the original application.
>
> \* \* \* \* \* \*
>
> "[Halle] argues that the introduction of the Conway Road access was simply a new issue which the Board had every right to consider. The Court agrees with [Halle] that the Board, pursuant to its *de novo* power, can address new issues. *Boehm [v. Anne Arundel County*, 54 Md.App. 497, 459 A.2d 590 (1982) ]. It cannot, however, indiscriminately entertain matters which in effect change the nature of the original controversy or application. In this case, the Board's entertainment of the Conway Road access was not a mere consideration of a new issue. It was much more. Indeed, given the amount of property affected by the Conway Road access and the intensity of the ancillary activities possibly to be performed thereon, the Board's decision impermissibly enlarged the substance of [Halle's] application. Therefore, it is the opinion of this Court that under the circumstances, the Board, in entertaining the Conway Road issue, expanded the scope of its inquiry to such a degree that the nature of the original application was significantly altered. In so doing, the Board exceeded the bounds of its *de novo* authority.
>
> "For the reasons aforementioned, this Court finds that the Board erred as a matter of law when it granted the

special exceptions and variance beyond the scope of [Halle's] original application." (footnotes omitted).

Halle noted an appeal to the Court of Special Appeals and then filed a petition for a writ of certiorari in this Court prior to consideration of the case by the intermediate appellate court. We granted certiorari to determine whether the Board exceeded its *de novo* authority in requiring the Conway Road access as a condition to the grant of the special exceptions and variance.

## II

Petitioners first point out that the Board has the authority to impose conditions to the grant of special exceptions or variances to preserve the health, safety, and welfare of the community. Further, petitioners stress that the proceedings before the Board were conducted *de novo,* or as if the proceedings before the administrative hearing officer had never occurred. As the broad issue of access was before the administrative hearing officer, petitioners conclude that, pursuant to its *de novo* power, the Board had the authority to address the alternative access to the site.

Respondents argue that Halle modified its application before the Board by proposing the alternative Conway Road access and thereby impermissibly expanded the scope of its original application. Further, respondents point out that the "amendment" for the new access road was not included in the notice of the public hearing and that Halle had not yet obtained ownership of the private access road intersecting with Conway Road. Consequently, respondents conclude that the circuit court was correct in reasoning that the proceedings before the Board of Appeals constituted an original rather than appellate proceeding regarding what was, in essence, a new application.

## III

Under the Express Powers Act, Md.Code (1957, 1994 Repl.Vol.), Art. 25A, § 5(U), each county is authorized to

create a board of appeals. Anne Arundel County, by its charter, created the Board of Appeals as an independent unit of county government and vested the Board with the power to hear *de novo* all appeals authorized by the Express Powers Act.[4] Anne Arundel County provides for initial action upon a special exception or variance request by an administrative hearing officer. Thereafter, appeal may be taken from the decision of the hearing officer to the Board of Appeals. Anne Arundel County Charter § 603 mandates that "[a]ll decisions by the County Board of Appeals shall be made after notice and hearing *de novo* upon the issues before said Board." The Board is purely a statutory creature and may exercise only those powers expressly granted to it by law or those which can be fairly implied. *Baylis v. Mayor & City Council of Baltimore*, 219 Md. 164, 168, 148 A.2d 429, 432 (1959).

 The power to impose conditions upon the grant of a variance or special exception is one which is implicit in the power to grant a variance or special exception. "This is so because the whole basis for the exception is the peculiar hardship to the applicant, and the Board is justified in limiting the exception in such a way as to mitigate the effect upon neighboring property and the community at large." *Id.* at 169, 148 A.2d at 432. *See also Skipjack Cove Marina, Inc. v. Board of County Comm'rs of Cecil County*, 264 Md. 381, 287 A.2d 49 (1972); 3 Yokley, *Zoning Law and Practice*, § 21–12. Both a variance and a special exception authorize uses which

---

4. The Express Powers Act, Md.Code (1957, 1994 Repl.Vol.), Art. 25A, § 5(U) provides that a county board of appeals may make a decision "on petition by any interested person and after notice and opportunity for hearing and on the basis of the record before the board, of such of the following matters arising (either originally or on review of the action of an administrative officer or agency) under any law, ordinance, or regulation of, or subject to amendment or repeal by, the county council, as shall be specified from time to time by such local laws enacted under this subsection: An application for a zoning variation or exception or amendment of a zoning ordinance map; the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval, exemption, waiver, certificate, registration, or other form of permission or of any adjudicatory order; . . ."

otherwise would not be permitted. Having been given the power to authorize such unusual uses, the Board must also have the power to limit those uses to protect the health, safety, and welfare of the community. *See Skipjack Cove Marina, Inc.,* 264 Md. at 386, 287 A.2d at 51 (The board is justified in limiting the special exception in such a way as to mitigate its effect upon neighboring property and the community at large.); 3 Rathkopf, *The Law of Zoning and Planning,* § 40.02[3] ("Even in the absence of any specific provision therefor in the ordinance, the board would thus have inherent power to condition a variance. If this were not so, the board, for lack of such right, might be forced, at times, to deny a variance and thus perpetuate the hardship which the restrictions have imposed upon the landowner.").

## IV

■ Respondents cite the three cases in which we have previously addressed *de novo* review by a county board of appeals, *United Parcel Serv., Inc. v. People's Counsel for Baltimore County,* 336 Md. 569, 650 A.2d 226 (1994) ("*UPS* "); *County Fed. Sav. & Loan Assoc. v. Equitable Sav. & Loan Assoc., Inc.,* 261 Md. 246, 274 A.2d 363 (1971), and *Daihl v. County Bd. of Appeals,* 258 Md. 157, 265 A.2d 227 (1970). In the latter two of those cases, however, we addressed the Board's jurisdiction rather than the scope of *de novo* review. In *Daihl,* we held that a board of appeals cannot review actions which were not appealed specifically:

"We think that the context in which the term *de novo* is used in Section 501.6 and 501.3 ... means that on appeal there shall be a *de novo* hearing on those issues which have been appealed and not on every matter covered in the application. In this sense *de novo* means that the Board of Appeals may hear testimony and consider additional evidence pertaining to the issue or issues presented on appeal. See Vol. 2, *The Law of Zoning and Planning,* Rathkopf, ch. 65–30, § 7. The original nature of a *de novo* hearing with its quality of newness is in contra-distinction to a review upon the record as exists where matters are heard on

certiorari. 73 C.J.S. *Public Administrative Bodies and Procedure,* § 204."

*Daihl,* 258 Md. at 162, 265 A.2d at 229. We made a similar holding in *County Federal,* quoting the above language from *Daihl. County Federal,* 261 Md. at 253–54, 274 A.2d at 367. Contrary to respondents' assertions, neither of these holdings affects the disposition in this case, as they show that we have consistently treated *de novo* appeals as wholly original proceedings, with the word "appeal" meaning simply that the proceedings are new and independent rather than strict review of prior proceedings. *See also Lohrmann v. Arundel Corp.,* 65 Md.App. 309, 318, 500 A.2d 344, 348 (1985) ("the use of the word 'appeal,' to the extent it denotes review of the action of a lower tribunal, is a misnomer, for there is no review."); *Hardy v. State,* 279 Md. 489, 369 A.2d 1043 (1977); *Travelers Indemnity Co. v. Nationwide Construction Corp.,* 244 Md. 401, 224 A.2d 285 (1966). Although the issues to be addressed on review by the Board may be limited, new and additional evidence is permitted. The proceedings, therefore, are wholly original with regard to all issues properly raised.

▮▮▮ In *UPS,* we interpreted the power granted by the Express Powers Act as providing charter counties the option to vest the board of appeals with either original jurisdiction or appellate jurisdiction over any subject matter set forth therein. *UPS,* 336 Md. at 588, 650 A.2d at 236. We concluded that it was the intent of the General Assembly that "[u]nder the Express Powers Act, a board of appeals is primarily an appellate tribunal, having only such original jurisdiction as a county's charter and ordinances expressly grant[.]" *Id.* at 591, 650 A.2d at 237.

"The protestants also rely upon *People's Counsel v. Crown Development,* 328 Md. 303, 316, 614 A.2d 553, 559 (1992), where this Court held, *inter alia,* that on an appeal from the decision of administrative officials granting final approval of a development plan, the Baltimore County Board of Appeals was authorized under the Express Powers Act and local law to receive and consider evidence in addition to that contained in the record before the adminis-

trative officials. The *Crown Development* case, like the *Hope* [*v. Baltimore County*, 288 Md. 656, 421 A.2d 576 (1980) ] case, was concerned only with the appellate jurisdiction of the Board of Appeals. Our holding with regard to additional or *de novo* evidence before the Board of Appeals does not support the view that the Board has original jurisdiction over all subjects delineated in § 5(U). The fact that an appellate tribunal may be authorized to receive additional evidence or hear a case *de novo* does not mean that it is exercising original jurisdiction. A *de novo* appeal is nevertheless an exercise of appellate jurisdiction rather than original jurisdiction. *See Hardy v. State*, 279 Md. 489, 492, 369 A.2d 1043, 1046 (1977). Whether a tribunal's exercise of jurisdiction is appellate or original does not depend on whether the tribunal is authorized to receive additional evidence. Instead, as Chief Justice Marshall explained, '[i]t is the essential criterion of appellate jurisdiction that it revises and corrects the proceedings in a cause already instituted, and does not create that cause...." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 175, 2 L.Ed. 60, 73 (1803)."

*Id.* at 589–90, 650 A.2d at 236. That decision, however, does not conflict with our prior interpretation of *de novo* proceedings. The Anne Arundel County Board of Appeals may not entertain a truly original petition for variance or special exception, but it may review the actions of the administrative hearing officer and take any action which that officer could have taken in the original proceeding. *See Soothcage v. King*, 227 Md. 142, 152–53, 176 A.2d 221, 227 (1961). Additional evidence may be presented in the *de novo* proceedings, and the Board may impose any conditions it feels necessary to protect the public health, safety, and welfare. It is appellate review mainly in the sense that a decision by the administrative hearing officer is a prerequisite to proceedings before the Board and not in the sense that the Board is restricted to the record made before the administrative hearing officer. *See also* 3 Rathkopf, *The Law of Zoning and Planning*, § 37.01[7][a] ("A person aggrieved by the decision [of the

administrative hearing officer] appeals to the board of appeals, asking it to rule upon the correctness of the administrative officer's determination; the board may reverse or affirm, wholly or partly, or may modify the order requirement, decision, or determination appealed from, and make such order, requirement, decision, or determination as, in its opinion, ought to be made in the case.").

We are left, therefore, with a question of first impression in this state regarding the scope of a board of appeals' *de novo* review. We shall first determine whether the Board had the authority under its *de novo* power to address the Conway Road access in the first instance, as it was not part of the original application. Then we shall address whether the conditions imposed by the Board were proper.

## V

■ The circuit court concluded that, although the Board could address issues not raised before the administrative hearing officer, it could not "indiscriminately entertain matters which in effect change the nature of the original controversy or application.... [T]he Board, in entertaining the Conway Road issue, expanded the scope of its inquiry to such a degree that the nature of the original application was significantly altered."

■ As acknowledged by the County in this case, and as noted by the Court of Special Appeals in *Lohrmann v. Arundel Corp.*, 65 Md.App. 309, 319, 500 A.2d 344, 349 (1985) (quoting *Boehm v. Anne Arundel County*, 54 Md.App. 497, 511, 459 A.2d 590, 599):

"[T]he *de novo* hearing contemplated by section 603 ... 'is an entirely new hearing at which time *all aspects of the case should be heard anew, as if no decision has been previously rendered* [.]'" (emphasis added).

Acting *de novo*, the Board exercises jurisdiction akin to original jurisdiction. *See Kaouris v. Kaouris*, 324 Md. 687, 714–15, 598 A.2d 1193, 1206 (1991); *Volz v. State Roads Comm'n*, 221 Md. 209, 214–15, 156 A.2d 671, 673 (1959).

In *Kaouris,* we held that on appeal *de novo* from the orphans' court, a circuit court could consider issues not raised or decided below:

"A party is foreclosed from challenging for the first time on appeal, the propriety of the exercise by a court of its power to act. Where, however, the appeal is from an orphans' court to a circuit court pursuant to Courts Article § 12–502, the exercise of that orphans' court's power may be challenged in the circuit court even though the issue was not raised in the orphans' court. This is so because the matter is heard *de novo.*"

324 Md. at 715–16, 598 A.2d at 1207; *see also Barbee v. Barbee,* 311 Md. 620, 537 A.2d 224 (1988) (directing the circuit court hearing a case *de novo* to determine issues not raised in the district court).

As discussed in Part IV, *supra,* the Board conducts wholly original proceedings with regard to all issues properly before it, and may consider new and additional evidence beyond that introduced before the administrative hearing officer. The issue appealed to the Board was whether the sand and gravel and rubble landfill operations would be in the best interest of the public health, safety, and welfare. The main reasons for the administrative hearing officer's denial of Halle's application were the traffic and environmental impacts the Patuxent Road access would produce. Although the Conway Road access was not specifically discussed in the prior proceedings, the broad issue of access was addressed. The same issue of how access to the site would affect the public health, safety, and welfare was raised before the Board, but, in essence, different evidence was used to prove Halle's position that the public safety would not be in danger. In a *de novo* hearing before a board of appeals, new or different evidence beyond that presented during the original proceeding may be used concerning any issue properly before the tribunal. *See Daihl* and *UPS, supra.*

We reject an interpretation of the County's two-tier process that would preclude the Board from addressing by condition

any aspect of a zoning proposal which might affect the public welfare. The access issue was so inextricably intertwined with the administrative hearing officer's decision that it was an issue properly before the Board which could be addressed.

## VI

Although we have never clearly defined the scope of the *de novo* powers of a county board of appeals in zoning cases, we have made it clear that a board of appeals can, and should in many cases, impose conditions when granting a special exception or variance to protect the public welfare. *See, e.g., Rohde v. County Board of Appeals,* 234 Md. 259, 199 A.2d 216 (1964); *Montgomery County v. Mossburg,* 228 Md. 555, 180 A.2d 851 (1962); *Oursler v. Board of Zoning Appeals,* 204 Md. 397, 104 A.2d 568 (1954). "It has long been held and is firmly established that it is not only proper but desirable to attach to the grant of a special exception conditions which do not violate or go beyond the law and are appropriate and reasonable." *Mossburg,* 228 Md. at 558, 180 A.2d at 852.

The power of the Board to address all issues properly before it by condition goes hand-in-hand with the authority to take whatever action the administrative hearing officer could take if presented with the same evidence. After determining that permitting the proposed operations would be in the best interest of the public, therefore, the Board had the authority to address the access issue by imposing conditions as part of its *de novo* power.

Respondents contend that the condition imposed by the Board of Appeals was only a "so-called" condition rather than a true condition. In support of this conclusion, respondents point to the circuit court's reasoning:

"The Court of Appeals, in *Baylis v. City of Baltimore,* 219 Md. 164 [148 A.2d 429] (1959), summarized the nature and scope of conditions imposed upon special exceptions: '[T]he Board is justified in *limiting the [special] exception in such a way as to mitigate the effect upon neighboring property and the community at large.' Baylis,* 219 Md. at 169 [148

A.2d 429] (emphasis added). A review of the circumstances in this case reveal that the Board's 'condition' of the Conway Road access is contrary to the characterization of the term as described by the *Baylis* court."

This analysis, however, ignores the findings by the Board that the Conway Road access would alleviate the wetland and traffic problems associated with the landfill and "mitigate the effect upon neighboring property and the community at large." The main difficulty with which the circuit court seems to have struggled is the fact that Halle did not own the property across which the Conway Road access would be built. The circuit court believed that a separate administrative proceeding was necessary for approval of such access:

> "[I]t seems logical to this Court that an access road of the significance as the one here must also be authorized by a special exception. To authorize such a substantial use as a 'condition' of the special exception, rather than authorizing the use of the access pursuant to a specific special exception grant, is contrary to reason and adverse to the plain reading and spirit of the zoning statute."

In *Rohde, supra,* we upheld a special exception to which a board of appeals had imposed a condition similar to the one at issue in this case. There, we upheld a condition that access be acquired over property owned by third parties. The developer proposed to reclassify 37 acres of undeveloped land to a zoning classification which permitted apartment development, and sought a special exception permitting two high rise apartment buildings on the tract. The reclassification allowed 592 apartment units, and the special exception would add 240 more. The court noted:

> "A proposal ... [had] been pending for some time, to extend a substantial highway known as Goucher Boulevard so as to run southeast from Taylor Avenue and connect with Loch Raven Boulevard. As planned, it would pass close to the northeast side of the Ortel land, but would not actually touch that tract. A small strip of land, now zoned R–6

would be left between, but would be useless for development purposes."

*Rohde,* 234 Md. at 263, 199 A.2d at 218. The board of appeals granted both the reclassification and the special exception conditioned upon the extension of Goucher Boulevard for access. We addressed the contention that the special exception could not be granted due to the uncertainty of the completion of the Goucher Boulevard extension in our holding:

"In reaching this conclusion, we have not overlooked *Bonhage v. Cruse, supra,* [233 Md. 10, 194 A.2d 803 (1963) ], which involved the same provision of the Baltimore County Zoning Regulations. There, we found that there was no assurance that a side street which led into a development behind the subject property would be widened, and that unless this street were widened it could not be shown that congestion would not result. Consequently Section 502.1 b was not satisfied. The situation here presented is different in that the extension of Goucher Boulevard is required as a condition precedent to construction and access to that new road is implicitly required, so that we think the Board could find that with the new road built and with access to it provided, it appeared that traffic congestion would not result from the grant of the exception."

*Id.* at 265, 199 A.2d at 219–20. Similarly, Halle must obtain a fee simple estate rather than an easement in the Conway Road access land before the landfill operations may proceed. That was explicitly made a condition of the Board's grant of the exception and variance. The uncertainty of a prerequisite's occurrence is irrelevant if the Board is satisfied that, once that prerequisite occurs, the approved activities would be appropriate. *See also Gulick v. Board of Environmental Protection,* 452 A.2d 1202, 1210 (Me.1982) ("The Board is free to set any conditions that fall within the range of its statutory authority. If any of those conditions require action by someone other than the applicant itself, it is up to that applicant to get whatever agreements or guarantees it needs."). The Board here imposed a true condition, not an illusory one. Contrary to the circuit court's conclusion, the condition im-

posed does in fact restrict Halle's use of the property. We shall uphold that condition, as it is justifiable in terms relating to the public health, safety and welfare. *See* 3 Yokley, *Zoning Law and Practice*, § 21–12; *Exxon, Inc. v. City of Frederick*, 36 Md.App. 703, 375 A.2d 34 (1977) (special exception conditioned upon entrance to and exit from gas station being positioned at a specific location).

## VII

The circuit court also determined that because of the "intensity of the ancillary activities possibly to be performed, the Board's decision impermissibly enlarged the substance of respondents application." Petitioners contend that this conclusion was erroneous, and that "the 'fundamental flaw' in the court's reasoning was that on its face, neither the Board's opinion nor the condition at issue authorized these facilities along the access road." Petitioners are correct, as the Board's order merely grants landfill and sand and gravel approval for the property; it does not mention off-site support facilities.

It is true that at the first hearing before the Board, Halle submitted an exhibit depicting support facilities along the alternative access and off of the 482 acres. After inquiry by the Board, however, Halle agreed to locate the support facilities within the 482 acres and submitted exhibits specifically locating them in that area. Halle stated that it could seek a subsequent special exception if it later desired to locate those facilities along the access road.

The Board recognized that the scope of Halle's application was limited to the 482 acre tract and appropriate access. Uses outside that tract were a question to be resolved in a separate application; hence, Halle agreed to keep the facilities within the acreage at issue. Nowhere in its opinion did the Board authorize support facilities along the access road, and the circuit court incorrectly concluded otherwise.

*JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. COSTS TO BE PAID BY RESPONDENTS IN EQUAL SHARES.*