712 A.2d 104

J. ROLAND DASHIELL REALTY COMPANY

v.

WICOMICO COUNTY, Maryland.

No. 1204, Sept. Term, 1997.

Court of Special Appeals of Maryland.

June 26, 1998.

Morton A. Sacks (McGuire, Woods, Battle & Boothe, L.L.P., Baltimore, Raymond S. Smethurst, Jr., Robert B. Taylor and Adkins, Potts & Smethurst, L.L.P., Salisbury, on the brief), for Appellant.

J. Joseph Curran, Jr., Atty. Gen. and J. Van Lear Dorsey, Asst. Atty. Gen., Baltimore, for Amicus Curiae, State of Maryland, Dept. of the Environment.

Robert M. McCaig (Edgar A. Baker, Jr. and Seidel, Baker & Tilghman, P.A., on the brief), Salisbury, for Appellee.

Before MOYLAN and HOLLANDER, JJ., and MARVIN H. SMITH, Judge (retired), Specially Assigned.

MARVIN H. SMITH, Judge (Retired), Specially Assigned.

At issue in this case is the validity of a provision in a special exception issued to J. Roland Dashiell & Sons, Inc. (Dashiell Construction) for a "sanitary fill operation (in connection with a borrow pit operation on the same property)." It restricted the materials brought to the landfill site "to the land clearance, demolition and construction debris waste generated by J. Roland Dashiell & Sons, Incorporated...."[1] We shall hold that the Circuit Court for Wicomico County properly enjoined appellant J. Roland Dashiell Realty Company (Dashiell Realty) "from making any further use of the Real Property [at issue] for the disposal of land clearance, construction or demolition debris other than such debris generated from the operation of [that company's] own construction, land clearance, or demolition activities...."

From 1971 to 1996 Dashiell Construction owned the land containing the rubble-fill at issue in this case. In 1971, it applied for and obtained a special exception for a borrow pit. It applied for and obtained a special exception in 1975 for a "sanitary fill operation (in connection with a borrow pit operation on the same property....)." A representative of the corporation explained that it was becoming more difficult to dispose of construction debris and that Dashiell Construction planned to use the pit for that purpose. The special exception was granted with the provision that "[f]ill operations shall be

---

1. J. Roland Dashiell & Sons, Inc., is a general contractor long on the Wicomico County scene. *See State v. Dashiell,* 195 Md. 677, 75 A.2d 348 (1950).

conducted by J. Roland Dashiell & Sons, Inc., only and shall be continuous from one point and not scattered throughout the site . . . ." This special exception was continued from time to time.

In 1987, as a result of a previous inspection by the Maryland Department of the Environment, Dashiell Construction applied to that department for a refuse disposal permit to expand the rubble fill to twelve acres. Ultimately, there was a consent order. It, among other things, provided that:

1–Any fill operation shall be conducted by the company *only*.

. . . .

3–All waste disposed of at the landfill site shall be limited to the land clearance, demolition and construction debris waste generated by J. Roland Dashiell & Sons, Incorporated unless further restricted by any other applicable federal, state, or local restrictions.

The Wicomico County Board of Zoning Appeals took cognizance of this consent order when it inserted a new condition into Dashiell Construction's special exception when it was extended in 1989. This condition provided:

2–Those materials to be disposed of shall only include "Land Clearance, Demolition, and Construction Debris" as defined in Environment Article, Section 9–204(a) and (d), *Annotated Code of Maryland* and operation shall be made in accordance with COMAR 10.17.11 and consistent with the requirements and conditions of J. Roland Dashiell & Sons, Inc., Consent Order, CO–88–SWE–022 issued by Hazardous and Solid Waste Management Administration.

The special exception was extended from time to time thereafter. In July, 1996, some months before the special exception was to expire, a five-year extension was requested with the further request that the special exception be in the name of "J. Roland Dashiell Realty Company to whom the

property is being transferred." [2] It apparently was represented that this proposed transfer was "from one generation to the next." This was accomplished with the provision that "[t]his Special Exception is subject to the Conditions of Approval as imposed March 30, 1989." The conditions included the requirement previously mentioned relative to being "consistent with the requirements and conditions of J. Roland Dashiell & Sons, Inc., Consent Order, CO–88–SWE–022 issued by Hazardous and Solid Waste Management Administration," which, as we have said, limited waste disposal at the site to materials "generated by J. Roland Dashiell & Sons, Incorporated."

Originally all stock in Dashiell Realty Company was owned by Dashiell Construction. It is now owned by Garnet Development, L.L.C.

Wicomico County (the County) filed a complaint against Dashiell Realty in the Circuit Court for Wicomico County. It alleged, among other things, that "20 to 25 tractor trailer loads a day of rubble are being emptied into the borrow pit" and that "[t]he site is operating in violation of the Special Exception and other zoning laws of Wicomico County, in that rubble waste is being disposed of at the site which is not being generated by J. Roland Dashiell & Sons, Inc., in its course of operations, but rather appears to be waste generated by

---

2. This request was for "an extension from the Special Exception # WA75127 Sanitary Landfill from the current expiration of April 4, 1997, for an additional five (5) years." As we have already said, "Special Exception # WA75127" contained the conditions here under attack. The request was from Dashiell Construction with the further request that the special exception "be issued in the name of J. Roland Dashiell Realty Company to whom the property is being transferred." Nothing was said concerning conditions. The language used would give rise to the inference that it was expected that the extended special exception would contain the same language as the prior special exception. Thus, it might be said that the parties here consented to or acquiesced in these conditions. The question as to whether under those circumstances an attack on these conditions as has been mounted here may be maintained has not been raised, briefed, or argued. Thus, we do not pass upon the point. We observe, however, that there is authority to the effect that one may not attack zoning to which one has consented. *See, e.g., Meredith v. Talbot County,* 80 Md.App. 174, 560 A.2d 599 (1989).

several out-of-state companies." The parties ultimately entered into a stipulation of facts which included:

During the period January 13, 1997 to March 12, 1997 such operations involved approximately 25 truck loads of rubble per day, except for Saturdays and Sundays, and included rubble from sources or projects other than those of J. Roland Dashiell & Sons, Inc. During this period 1035 tons of rubble from J. Roland Dashiell & Sons, Inc., were deposited and 11292 tons of rubble from other parties were deposited. This volume of rubble and trucks substantially exceeded that which had been transported to the site at any time prior to that period.

As indicated at the outset of this opinion, the circuit court enjoined appellant, Dashiell Realty, from making any further use of the property in question "for the disposal of land clearance, construction or demolition debris other than such debris generated from the operation of [its] own construction, land clearance, or demolition activities." This appeal followed.[3]

Questions presented as perceived by Dashiell Realty are:

1 –id the trial court commit reversible error in ruling that the special exception restricts the source of the rubble that can be deposited in Appellant's rubble fill?

2–Did the trial court commit reversible error in failing to find that state regulation of solid waste preempts the local government from imposing a rubble source restriction upon Appellant's rubble fill?

3–Did the trial court commit reversible error in failing to find that the rubble source limitation imposed *arguendo* by the special exception is invalid and unenforceable because it (a) violates the Commerce Clause of the Constitution of the United States and (b) since the restriction bears no substantial relationship to public health, safety and welfare, it

---

**3.** Wicomico County took no appeal. It thus has acquiesced in the court's restriction to materials from Dashiell Realty rather than Dashiell Construction.

violates Appellant's constitutional right to due process of law?

4–Did the trial court commit reversible error in (a) finding that Appellant's operation of its rubble fill is a Nonconforming Special Exception Use under Wicomico County's Paleochannel Regulation or (b) in failing to find that such Paleochannel Regulations are preempted by State regulation of solid waste?

We need not consider this last question because the contention of the County as reflected in paragraph 14 of its complaint that the Paleochannel Regulations "require[d] approval by the Planning Commission and Board of Zoning Appeals prior to enlarging size or area" was but another, alternate, basis for the relief it sought. Given that which we shall hold relative to the special exception contentions as set forth in the first three questions, we have no need to reach this fourth question. We shall discuss the questions seriatim.

## 1.

In this case one of the conditions of the special exception was that it was to be "consistent with the requirements and conditions of J. Roland Dashiell & Sons, Inc., Consent Order, CO–88–SWE–022 issued by Hazardous Waste and Solid Waste Management Administration." That consent order was to the effect that "waste disposed of at the landfill site sh[ould] be limited to the land clearance, demolition and construction debris waste generated by J. Roland Dashiell & Sons, Incorporated. . . ."

Under the Wicomico County zoning ordinance (Wicomico County Code § 225–106D):

When granting any special exception, the Board of Zoning Appeals or Planning Commission may impose such conditions and restrictions upon the site design, agricultural character, location, type of construction, ingress and egress, landscaping, screening and operation as deemed necessary to mitigate any potential adverse impacts upon adjacent properties or the general area and to insure compliance with

the standards, criteria or other specific requirements for a special exception.

Boards of zoning appeals when granting special exceptions are vested with power to put limits on them. *See, e.g., Halle Cos. v. Crofton Civic Ass'n,* 339 Md. 131, 140–41, 661 A.2d 682, 686 (1995), where Judge Karwacki said for the Court:

The power to impose conditions upon the grant of a variance or special exception is one which is implicit in the power to grant a variance or special exception. "This is so because the whole basis for the exception is the peculiar hardship to the applicant, and the Board is justified in limiting the exception in such a way as to mitigate the effect upon neighboring property and the community at large." [*Baylis v. Mayor & City Council of Baltimore,* 219 Md. 164 (1959)] at 169, 148 A.2d at 432. *See also Skipjack Cove Marina, Inc. v. Board of County Comm'rs of Cecil County,* 264 Md. 381, 287 A.2d 49 (1972); 3 Yokley, *Zoning Law and Practice,* § 21–12. Both a variance and a special exception authorize uses which otherwise would not be permitted. Having been given the power to authorize such unusual uses, the Board must also have the power to limit those uses to protect the health, safety, and welfare of the community. *See Skipjack Cove Marina, Inc.,* 264 Md. at 386, 287 A.2d at 51 (The board is justified in limiting the special exception in such a way as to mitigate its effect upon neighboring property and the community at large.); 3 Rathkopf, *The Law of Zoning and Planning,* § 40.02[3] ("Even in the absence of any specific provision therefor in the ordinance, the board would thus have inherent power to condition a variance. If this were not so, the board, for lack of such right, might be forced, at times, to deny a variance and thus perpetuate the hardship which the restrictions have imposed upon the landowner.").

We think it absolutely plain that by the terms of the special exception which incorporated the consent order no waste materials were to be brought to the site except those from Dashiell Construction's own "land clearance, demolition and

construction. . . ." It is as plain as the nose on one's face. The plain language here controls.

### 2.

We find persuasive as to the contentions relative to preemption this Court's recent decision, handed down after argument in this case, in *County Comm'rs of Queen Anne's County v. Soaring Vista Properties, Inc.*, 121 Md.App. 140, 708 A.2d 1066 (1998), where an analogous situation was considered. Judge Hollander, for the Court, opened that opinion by saying that the Court "must determine whether State law preempts a local zoning ordinance that makes construction of a sewage sludge storage facility a conditional use." She pointed out for the Court in footnote two, "The terms 'conditional use' and 'special exception use' are frequently interchanged. *Richmarr* [*Holly Hills, Inc. v. American PCS, L.P.*] [117 Md.App. 607] at 643 n. 26 [701 A.2d 879]; *Hofmeister v. Frank Realty Co.*, 35 Md.App. 691, 699 [373 A.2d 273] (1977)." The Court said in that opinion:

> Accordingly, despite the breadth of the Sewage Sludge Part generally, and the specific provisions that address safety, environmental, and health concerns, we are persuaded that the Legislature did not intend to preempt the field in regard to traditional zoning matters, such as the *location* of sewage sludge storage facilities. Rather, we believe the Legislature intended to complement, not supplement, local zoning law. Therefore, we agree with appellants that "[t]o affirm the circuit court would be to leave various matters, including the particular location of a sludge facility, if it meets MDE's permitting criteria, unaddressed and unregulated by either state or county law."

> In reaching this conclusion, we are convinced that the Legislature was mindful of the vital role of zoning in accomplishing the "coordinated, adjusted, and harmonious development of [a] jurisdiction . . . which will . . . promote . . . [the] general welfare." *Schultz v. Pritts*, 291 Md. 1, 19–20 [432 A.2d 1319] (1981) (quoting Maryland Code (1957,

1978 Repl.Vol.) Article 66B, § 3.06). In *Schultz*, the Court explained:

Zoning provides a tool by which to establish general areas or districts devoted to selected uses. Indeed, the very essence of zoning is the territorial division of land into use districts according to the character of the land and buildings, the suitability of land and buildings for particular uses, and uniformity of use.

Generally, when a use district is established, the zoning regulations prescribe that certain uses are permitted as of right (permitted use), while other uses are permitted only under certain conditions (conditional or special exception use). In determining which uses should be designated as permitted or conditional in a given use district, a legislative body considers the variety of possible uses available, examines the impact of the uses upon the various purposes of the zoning ordinance, determines which uses are compatible with each other and can share reciprocal benefits, and decides which uses will provide for coordinated, adjusted, and harmonious development of the district.

. . . .

When the legislative body determines that other uses are compatible with the permitted uses in a use district, but that the beneficial purposes such other uses serve do not outweigh their possible adverse effect, such uses are designated as conditional or special exception uses.

*Id.* at 20, 432 A.2d 1319 (citations omitted)(footnote omitted).

*Id.* 121 Md.App. at 162–63, 708 A.2d at 1077.[4]

 In *Talbot County v. Skipper*, 329 Md. 481, 487–88, 620 A.2d 880 (1993), Judge Eldridge said for the Court, "Under

---

4. Judge Rita Davidson the author for the Court of Appeals of *Schultz v. Pritts*, 291 Md. 1, 432 A.2d 1319 (1981), was a zoning expert in her own right.

In *Soaring Vista* Judge Hollander also pointed out for the Court:

our decisions, state law may preempt local law in three ways: 1) preemption by conflict, 2) express preemption, or 3) implied preemption." (Footnotes omitted.) We have none of that here. There is no express preemption. There is no implied preemption. Zoning is concerned with land use. The statute that Dashiell Realty would have us hold preempts zoning here is concerned not with land use, but with how to handle solid waste disposal properly. There is no conflict. The land fill statute by its very terms recognizes zoning and thus evinces the intent on the part of the General Assembly not to preempt specifically nor to preempt impliedly. Maryland Code (1982, 1996 Repl.Vol.), § 9–210 of the Environment Article, in setting forth the prerequisites for issuing a waste disposal permit states:

(a) *In general.*—The Secretary may not issue a permit to install, materially alter, or materially extend a refuse disposal system ... until the requirements set forth in this subsection are met in the following sequence:

. . . .

(3) The county has completed its review of the proposed refuse disposal system, and has provided to the Department a written statement that the refuse disposal system:

---

We emphasize that local zoning boards may not utilize the conditional use process as a ploy to frustrate or undercut an identifiable State objective. Stated otherwise, a zoning board may not arbitrarily or unlawfully withhold approval of a conditional use application that satisfies valid criteria, in order to preclude the erection of an unwanted sewage sludge storage facility. Nevertheless, such contentions are not before us; the local zoning authorities never considered the merits of appellees' conditional use application.
*Soaring Vista,* at 167, 708 A.2d at 1079.
*Soaring Vista* involved a locality's attempt, by text amendment to its zoning ordinance, to require sludge storage facilities to obtain a conditional use. The locality, however, had not acted on the property owner's application for a conditional use. In the instant case, the Wicomico County Board of Zoning Appeals has granted a special exception to Dashiell Construction for its use, and faithfully renewed it a number of times. Moreover, Dashiell Realty has failed to identify any State objective which could arguably be frustrated or undercut by appellee's grant of the special exception with the condition.

(i) Meets all applicable county *zoning* and land use requirements.... [Emphasis added.]

We have just quoted from *Halle,* 339 Md. at 141, 661 A.2d at 686, in which the Court of Appeals stated, "The power to impose conditions upon the grant of a variance or a special exception is one which is implicit in the power to grant a special exception." The restrictions here imposed were reasonable. To apply the propositions put forth by Dashiell Realty would result in a situation in which a governmental body with zoning powers, such as Wicomico County or the City of Salisbury, would be powerless to prevent a well heeled, spiteful, and irresponsible person or corporation from buying up, for instance, the very center of Salisbury, clearing it of buildings, and then proceeding with solid waste disposal, provided, of course, that such person or corporation obtained the requisite state permits. The argument of Dashiell is not well founded.

### 3.

Dashiell Realty cites numerous state and federal cases, including those of the Supreme Court, on the issue of whether the restriction here is an infringement on interstate commerce. None of the cases is applicable. For instance, the restriction here is in no way comparable to that in *Browning–Ferris, Inc. v. Anne Arundel County,* 292 Md. 136, 438 A.2d 269 (1981). There, in an effort, as Judge Eldridge put it for the Court, "to control the transportation and depositing of various hazardous and toxic wastes, and radioactive materials within its borders," the County enacted ordinances, one of which prohibited "the disposal in and *transportation through Anne Arundel County* of various hazardous wastes not originating in that county." *Id.* at 138–39, 438 A.2d 269 (emphasis added) (footnote omitted). The Court of Appeals held this provision to be "clearly prohibited by the Commerce Clause." It held valid, however, the portion of the statute which "requir[ed] a license to *dispose* of hazardous waste in the county, and requiring that the cargo manifest be retained at the dumpsite...." (Emphasis added.) The restriction here does

not in any way forbid bringing out-of-state material to this site. Wicomico County abuts Sussex County, Delaware. This site is but a few miles from the Maryland–Delaware line. If Dashiell Realty were to have a contract in Delmar, Delaware (the portion of the town of Delmar in Delaware as distinguished from Delmar, Maryland, that portion in Maryland) or, for that matter, in Dover, Delaware (about fifty miles away), this restriction would in no wise prevent Dashiell Realty's importation of materials generated at those sites to this waste disposal site.

■ We have referred to the Wicomico County Code provision granting the Board of Zoning Appeals the right to impose conditions and restrictions when granting any special exception and to *Halle,* 339 Md. at 140–41, 661 A.2d at 686, where the Court of Appeals spoke of such powers. No doubt the Board of Zoning Appeals in imposing the restriction here desired to limit the amount of traffic to and from the waste disposal site and the amount of materials which would be placed therein. The point is illustrated by the stipulation between the parties that in a two-month period in 1997 the rubble deposited at the site by Dashiell Construction amounted to 1,035 tons compared to "11292 tons of rubble from other parties . . . ." This restriction had to do with land use, not commerce. This does not impinge upon interstate commerce.

■ For the reasons just stated, the argument of Dashiell that "[t]he rubble source restriction violates due process because it bears no substantial relationship to public health, safety and welfare" is without merit.

**JUDGMENT AFFIRMED;**

**APPELLANT TO PAY THE COSTS.**